**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Delmore DEATON, Defendant-Appellant.**

**No. 72-1197.**

United States Court of Appeals, Fifth Circuit.

Oct. 20, 1972.

caped the same night, and were discovered to be missing at the same bed check. They traveled from Bossier City, Louisiana, to Shreveport, Louisiana, at the same time in the same car furnished by Deaton. In Shreveport, Deaton provided them with food and lodging at the same place and over the same period of time. Over objection, evidence was admitted that Deaton had himself been committed at the Texarkana institution and released just seven days before Pickle and Smygelski escaped. There was other evidence from which the jury could infer that Deaton along with the two escapees planned and participated in acts toward the commission of an armed robbery for the purpose of providing the escapees with funds to finance their continued flight.

Maynard E. Cush, Shreveport, La., (court-appointed), for defendant-appellant.

Donald E. Walter, U. S. Atty., D. H. Perkins, Asst. U. S. Atty., Shreveport, La., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge; GODBOLD and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant was convicted at a jury trial under two counts, each alleging violation of 18 U.S.C. § 1072,[1] by harboring and concealing an escaped prisoner, and given maximum sentences of three years on each count to be served consecutively. The conviction is questioned on several grounds, and the sentences on the ground that the separate and consecutive sentences were imposed for a single offense. We affirm the conviction, but agree that only a single sentence could be imposed and, therefore, remand for resentencing.

The wording of the counts is identical with the exception that each count names a different person as the escapee that Deaton allegedly harbored and concealed. The two escapees, Pickle and Smygelski, were fugitives from the federal correctional institution at Texarkana, Texas. There was evidence from which the jury could infer that they planned, carried out, and continued their escape as a joint undertaking. They es-

### I. The conviction

■ (1) The District Court, over objection, permitted introduction of evidence showing that Deaton had been incarcerated at Texarkana with the two escapees, and showing the precise time and place of his release seven days prior to their escape. This was not improper use of evidence of Deaton's prior criminal conviction for the purpose of showing criminal disposition. The evidence was independently probative as circumstantial evidence of the offense charged, tending to prove not only that Deaton had knowledge that Pickle and Smygelski were escapees, which is an element of the offense, but also that he was in the vicinity of Shreveport at the time during which the harboring took place. It was admitted for that proper limited purpose, and a proper cautionary instruction was given. In Andrews v. United States, 309 F.2d 127 (5th Cir.), cert. denied, 372 U.S. 946, 83 S.Ct. 939, 9 L.Ed.2d 970 (1963), a Dyer Act case, the prosecutor was permitted to refer in his opening statement to the fact that de-

[1]. "Concealing escaped prisoner
"Whoever willfully harbors or conceals any prisoner after his escape from the custody of the Attorney General or from a Federal penal or correctional institution, shall be imprisoned not more than three years."

fendant was in jail in Texas immediately prior to the alleged offense, and evidence to that effect was admitted. We held there was no error since

> The purpose of such testimony was not to prejudice the jury, but to place the appellant in the vicinity of the crime at the time it was committed.
>
> . . .
>
> If the evidence of incarceration has a direct tendency to prove the particular crime for which the accused is indicted, it is relevant on a basis other than the probability of guilt based on a general criminal disposition. It is relevant and proper, since it tends to identify the accused with a specific crime . . . .

309 F.2d at 129.

■■■ (2) Deaton's parole officer testified, over objection, to statements made to him by Deaton, tending to incriminate Deaton on the harboring and concealing charge, uttered in response to direct interrogation by the parole officer when Deaton was in custody, and without the officer having given Deaton the warnings required by *Miranda.* We have considerable doubt as to the propriety of even calling the parole officer as a witness for such a purpose. But, pretermitting that, we have no doubt that the testimony was inadmissible unless the officer gave prior *Miranda* warnings. A parolee is under heavy psychological pressure to answer inquiries made by his parole officer, perhaps even greater than when the interrogation is by an enforcement officer. The use of admissions extracted in this manner from the parolee, in his trial on charges based on the criminal conduct inquired about, raises an issue significantly different from that in United States v. Johnson, 455 F.2d 932 (5th Cir. 1972). There we held that because a parole revocation hearing was not an adversary or a criminal proceeding but rather was an administrative hearing wherein the exclusionary rule has no application, prior *Miranda* warnings are not required as a condition to the admission in evidence at the revocation hearing of statements made by the parolee to the parole officer. In this instance, however, the error was not reversible. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). On the preceding day Deaton, after having been given proper *Miranda* warnings, had made verbal statements to police officers incriminating himself in connection with the proposed robbery to gain funds for the escapees. Subsequent to the parole officer's interrogation, the verbal statements which Deaton had earlier made to the police were reiterated by Deaton in a formal recorded statement. Thus, the statements to the parole officer were merely cumulative of evidence from other sources, including both direct evidence and Deaton's own earlier voluntary statements to the police officers.

■■■ (3) There was no error in denial of Deaton's motion for compulsory process for witnesses. Of the six persons listed in the motion, Bonner appeared and testified, Peyton's proposed testimony would have been inadmissible as hearsay, and the proposed testimony of the other four would have been properly excluded as irrelevant to the charges.

■■■ (4) The trial judge gave this oral charge:

> The defendant is under no affirmative duty to volunteer information he may have had as to his knowledge of the whereabouts of a fugitive escapee. On the other hand, if asked by a law enforcement officer whether he knows the whereabouts of a fugitive, he must truthfully answer if he has such knowledge. In other words, did the defendant play a part in covering up and assisting the flight after the escape of Smygelski and Pickle?

We need not rule on whether the failure to truthfully answer may give rise to guilt of concealing, see United States v. Foy, 416 F.2d 940 (7th Cir. 1969), because, this charge, if error, was not reversible error. There was clear and con-

vincing evidence of Deaton's acts in transporting, and finding and procuring lodging for the two escapees, which without regard to any failure to divulge information, sufficiently established all elements of the offense.

■ We consider it unnecessary to discuss two written charges requested by Deaton and refused, other than to say that they were properly refused because each contained an erroneous statement of law.

■ (5) Deaton insists that state district Attorney Lutz, called as a government witness, improperly commented on Deaton's assertion of his fifth amendment privilege against self-incrimination at a prior criminal trial in state court. The defendant in that trial was one Stump, and the charges against him related to the robbery planned to raise funds for the escapees. Deaton's claim is not supported by the record. On direct examination by the government Lutz was asked about the Stump prosecution, without objection by Deaton, and in his answer stated that Pickle and Smygelski claimed the fifth amendment when called as witnesses. Lutz's answer did not mention Deaton.

## II. *The sentence*

■ We conclude that the harboring and concealment in which Deaton engaged constituted but a single offense, so that imposition of separate and consecutive sentences was error. Deaton's course of conduct with respect to the two escapees was the same, consisting of furnishing food, transportation and lodging to both of them at the same time and place, and participating to some degree in the plans for the robbery. There was some evidence that while Deaton provided Pickle with a pistol and with a woman with whom Pickle had sexual intercourse, he favored Smygelski with neither of these gratuities,

but these additional acts are not determinative of the separate sentence issue.

We consider this case to be controlled by Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), in which petitioner had been sentenced to two consecutive terms under the Mann Act for transporting two women across the state line in the same vehicle and by the same trip. The Court held that the act constituted but one offense, basing that conclusion upon the fact that the statute was silent on the subject.

> About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. . . . It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment.

Id. at 83, 75 S.Ct. at 622, 99 L.Ed. at 910.

> [I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes.

Id. at 84, 75 S.Ct. at 622, 99 L.Ed. at 910–911.[2] We have no more to go on in the present case than the Court had in *Bell.* The presence of the adjective "any" and singular nouns in the Mann Act [". . . any woman or girl"] was not used in *Bell* as a basis for a judicial finding of a clear legislative intent to punish a defendant separately

---

2. Compare Nelms v. United States, 291 F.2d 390 (4th Cir. 1961), in which two separate and distinct transportations of the same woman in interstate commerce, by different journeys, was held to be two transactions justifying two sentences.

for each woman or girl he transports by his single course of action. In fact that approach was essentially what was unsuccessfully urged by the dissenters. Similarly the use in the instant statute of the adjective "any" and a singular noun and pronoun [". . . conceals any prisoner after his escape"] is not sufficient authority for a judicial pronouncement that Congress clearly intended that the number of sentences a man may be given for a single course of action of concealment could be determined by adding up the number of escapees concealed. Furthermore, as with the Mann Act, the legislative history of § 1072 is silent as to what Congress intended to be the allowable unit of prosecution and punishment.

In Ladner v. United States, 230 F.2d 726 (5th Cir. 1956), rev'd 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), the defendant had been sentenced for two separate offenses, under the same statute, of assaulting two federal officers by the sole act of discharging a shotgun in their direction. This court affirmed by applying the "same evidence" test, theretofore employed in many cases, and expressly declined to follow Bell. On appeal the Supreme Court reaffirmed Bell, reversed this court, and held that the single act of the petitioner constituted but a single violation of the statute.

Following our reversal in Ladner we have on at least two occasions applied the Supreme Court's reasoning in Bell and Ladner to dispose of cases presenting an issue as to the allowable unit of prosecution and punishment. In United States v. Carty, 447 F.2d 964 (5th Cir. 1971), we held that the defendant could not be separately convicted or sentenced on each of three counts of interstate transportation of firearms where all counts arose from the same interstate trip. In United States v. Tarrant, 460 F.2d 701 (5th Cir. 1972), we applied the reasoning of Bell to affirm the conviction of a defendant on five counts of illegal possession of unregistered firearms [26 U.S.C.A. § 5861(d)] precisely because an examination of the statutory scheme involved there convinced us that Congress intended the possession of the five firearms to constitute five separate offenses. We are not so convinced here of the congressional intent of the applicable statute.

Ashe v. Swenson, 397 U.S. 436, 90 S. Ct. 1189, 25 L.Ed.2d 469 (1970), which the District Court relied upon in imposing two sentences upon Deaton, and which the government cites as dispositive of this appeal, presented an issue of double jeopardy, which is not involved in this case, and there the Supreme Court expressly excluded the issue of multiplicitous offenses and punishments arising from the same conduct, which is the question before us.

> The question is not whether Missouri could validly charge the petitioner with six separate offenses for the robbery of the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbery of the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again.

Id. at 446, 90 S.Ct. at 1195, 25 L.Ed.2d at 477. The distinction between double jeopardy and multiplicity is an established one, e. g., Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); United States v. Sabella, 272 F.2d 206 (2d Cir. 1959), and should be maintained here.

The conviction is affirmed. The sentences are vacated and the case remanded for resentencing.