**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Newt W. GOODWIN and Kathleen L. Nail, Defendants-Appellants.**

**No. 72–1882.**

United States Court of Appeals, Fifth Circuit.

Dec. 5, 1972.

Rehearing and Rehearing En Banc Denied Jan. 15, 1973.

William A. Summers, III, Metairie, La., for Newt W. Goodwin.

Robert J. Stamps, New Orleans, La., for Kathleen L. Nail.

Gerald J. Gallinghouse, U. S. Atty., Robert J. Livingston, Mary Cazalas, Asst. U. S. Attys., New Orleans, La., for the United States.

Before COLEMAN, GOLDBERG, and GODBOLD, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellants, Kathleen L. Nail and Newt W. Goodwin, bring this appeal from a judgment of conviction entered after a jury found them guilty on all counts of a seven-count indictment charging them with having violated 18 U.S.C. § 152 by knowingly and fraudulently transferring and concealing property of a bankrupt corporation with intent to defeat the bankruptcy laws. Nail and Goodwin, who are sister and brother, were at one time officers of Mr. Mod Shop, Inc., a Louisiana corporation. It was alleged in the indictment and found by the jury that from the time of adjudication of Mr. Mod Shop, Inc., as a bankrupt until the date of the indictment, only part of the assets of the corporation were made available by appellants to the creditors of the corporate bankrupt and to the court hearing the matter.

Appellants jointly raise six distinct points of error in this appeal, the first five of which we have little trouble in rejecting. The sixth we find to be meritorious as to appellant Nail, and we reverse her conviction. Appellant Goodwin's conviction, however, is in all things affirmed. Because appellants' points of error primarily concern events that occurred during the course of their trial, we discuss the facts of this case only as they relate to each point raised.

I.

Appellants assert as their first point of error that the trial judge refused to ask the jury a question at voir dire that appellants had requested pursuant to Rule 24(a), Fed.R.Crim.P.: "[W]ould the jury . . . predicated upon the indictment and if [appellants] did not take the stand . . . hold this fact against [appellants]?" The trial judge refused the request when he reasoned that (1) the jurors had unequivocally agreed to follow any instructions he might give them, (2) if appellants had not taken the stand before the submission of the case, he would instruct the jury to ignore that fact, and (3) the jurors could therefore be expected to ignore appellant's failure to testify, if that circumstance developed. Appellants subsequently declined to testify, and the trial judge instructed the jury accordingly.[1]

Rule 24(a) necessarily vests the trial judge with wide discretion re-

---

[1]. "Now, the law specifically provides that persons standing trial in Federal Courts on charges of criminal violations, they may be, at their own request, but not otherwise, competent witnesses at said trial. The law, at the same time, traditionally provides that the failure on the part of the defendants to make such a request to testify shall not create a presumption against the person so charged in standing trial. Therefore, you are expressly instructed that the failure of the defendants in this case to take the witness stand and testify in their own behalf creates no presumption against them and you must not permit this fact to weigh even in the slightest degree against the defendants. In fact, you mustn't allow the subject to even enter into your discussions and your deliberations as a jury, in any manner, whatsoever."

There is no evidence that the jury failed to follow the instructions of the court.

garding the manner in which the voir dire is to be conducted.[2] *See* United States v. Gassaway, 5 Cir. 1972, 456 F. 2d 624. Appellants have cited us no cases supporting their suggestion that refusing to ask the instant question abused that discretion, and we find that failure to ask a requested Rule 24(a) question does not amount to an abuse of discretion if the court's general questions, coupled with its charge to the jury, afford a party the protection sought. United States v. Gassaway, *supra*; United States v. Jackson, 5 Cir. 1971, 448 F.2d 539.

## II.

■ Appellants' second assertion is that they were denied a fair trial under the Sixth Amendment because the trial court refused to permit them to inspect under the Jencks Act, 18 U.S.C. § 3500, a written report of FBI interviews with witness Ross Summitt. We find this argument to be without merit. The trial judge allowed defense counsel to examine the witness regarding Jencks Act material. The judge then personally examined the material *in camera* and sealed the challenged documents in an envelope for inclusion in the record on appeal. We have opened the sealed evidence and have examined the documents, which we find to be FBI memoranda of an agent's investigative interviews (FBI Form 302). The documents are the interviewer's interpretative notes, they do not quote Ross Summitt directly, and they are not signed or otherwise adopted by Summitt. Accordingly, under neither the clear wording of the Act itself nor the elucidating tutelage of Campbell v. United States, 1961, 365 U. S. 85, 81 S.Ct. 421, 5 L.Ed.2d 428, is this material discoverable. *See, e. g.,* United

States v. Roberts, 5 Cir. 1971, 455 F.2d 930.

## III.

Appellants' third argument is that they were prejudiced by the erroneous introduction of certain evidence. Specifically, they complain that Donald L. Hughes, an FBI agent who was qualified at trial as an expert in accounting, was allowed to invade the province of the jury by giving opinion testimony. They further urge that this asserted error was compounded when a tabular summary of his testimony was introduced into evidence and taken into the jury room. Finding that neither point is supported by the record, we reject both contentions.

■ Hughes testified at great length regarding the financial books and records of Mr. Mod Shop, Inc. Appellants' objection regarding the "opinion testimony" apparently is that Hughes was allowed to imply and/or state which conveyances "were fraudulent." Appellants' briefs give us virtually no guidance as to when this alleged error occurred and cite us no authorities supporting their argument. Nevertheless, we have independently studied the entirety of Mr. Hughes' testimony, which covers approximately two hundred pages of the reporter's transcript, and we find nothing that even approaches the level of improperly stating conclusory inferences.

■ Without directing our attention to any specific pages of the record, appellants next urge that error was committed when Hughes' summary chart was introduced and taken into the jury room. We find that this assertion is similarly lacking in factual support.

2. Rule 24(a) of the Federal Rules of Criminal Procedure provides:
   "The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper."

One "summary" was indeed admitted into evidence,[3] but we agree with the government that this evidence met the tests applied in this Circuit. United States v. Kane, 5 Cir. 1971, 450 F.2d 77, 85–86, makes clear that summary charts are ordinarily admissible in the trial court's discretion when the following conditions exist: the charts are based upon competent evidence before the jury; the primary evidence utilized to construct the charts is available to the other side for comparison in order that the correctness of the summary may be tested; the person who prepared the charts is available for cross examination; and the jury is properly instructed concerning their consideration of the charts. See also Gordon v. United States, 5 Cir. 1971, 438 F.2d 858; Baines v. United States, 5 Cir. 1970, 426 F.2d 833; McDaniel v. United States, 5 Cir. 1965, 343 F.2d 785, cert. denied, 382 U.S. 826, 86 S.Ct. 59, 15 L.Ed.2d 71. It affirmatively appears that each of these requirements was here satisfied, so the point must fail. See also Kroll v. United States, infra, 433 F.2d at 1289–1290.

■ At the close of the trial, the judge excluded from the evidence the jury could take into the jury room a chart that Hughes had used as a "visual aid" when testifying.[4] We are uncertain whether this was the same chart, but regardless of whether there was one chart or two, the assignment of error fails when tested against the aforementioned authorities. Hughes first merely stated what the books in evidence reflected. He then based his summary information on properly introduced evidence and the testimony of other witnesses. Since the chart itself was thus admissible, see, e. g., United States v. Kane, supra, there was no error in using it only as a visual aid to help the jurors understand other evidence before them.

## IV.

■ Appellants' fourth point is an assertion that prejudicial error was committed when the trial court admitted, as proof of "system and intent," evidence of events occurring after the transactions named in the indictments. This argument must fail. The clear rule is that although evidence introduced in a criminal trial should relate only to the specific offense charged, prior or subsequent incidents may be introduced to establish that a defendant possessed a requisite knowledge or intent or that there is a consistent pattern, scheme of operations, or similarity of method. United States v. Alston, 5 Cir. 1972, 460 F.2d 48. See also United States v. Harrison, 5 Cir. 1972, 461 F.2d 1127. Of course, the probative value of the evidence offered to show "system and intent" must be balanced against any inflammation or prejudice that may result from the nature of the evidence offered. That balancing, however, is left largely within the sound discretion of the trial judge. See, e. g., United States v. Byrd, 2 Cir. 1965, 352 F.2d 570. Our reading of the instant record has convinced us that no abuse of discretion occurred when the judge below admitted evidence of similar financial transactions conducted by appellants after the dates named in the indictment that were similar in technique

3. The colloquy leading to the introduction of this summary appears at pages 259–66 of the reporter's transcript.

4. The court's ruling appears at page 576 of the transcript:

"Counsel, I take the position that the chart, the board that you have prepared there has approximately twenty-five different dates and about twenty-five different entries, all of which are basically and fundamentally reflected in exhibits which are already in evidence. However, I do think that a chart or summary can tend to be a prejudicial unfair approach in the presentation of evidence because once the chart is received in evidence, the chart takes on a reality of its own, so to speak. I think the chart is a proper chart and a fair chart for purposes of closing argument. I think that it can be exhibited to the jury and you can argue to the jury from the chart. But, as far as receiving it in evidence as an exhibit, I am not going to receive it in evidence."

and method to the transactions for which appellants were charged.

## V.

Appellants' fifth point of error is an attempt to bring their case within the rule prohibiting prosecutorial comments on the failure of the accused to testify. *See, e. g.,* Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Griffin v. California, 1965, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. Appellants cite the following excerpt from the prosecutor's closing argument in support of the proposition that their Fifth Amendment rights to decline to testify were here prejudiced:

"But, I ask you to look at the evidence, what evidence have you had? Have they given you any evidence of support . . .

"But, we are trying to get the evidence to you as we see it and we are trying to stay within the bounds of the law. But, it's as I was saying, ladies and gentlemen, I've heard something like fifteen witnesses take the stand, I've questioned them, defense attorneys have questioned them, we have had records introduced, I introduced about thirty-three, I think, defense attorneys introduced one, he had an opportunity to look at the evidence there, I had the opportunity to look at the evidence. We all had an opportunity to look at the evidence."

We reject the notion that these remarks prejudiced appellants. Even a cursory reading of *Chapman* and *Griffin* will reveal that the prosecutorial comments there far exceeded the instant remarks. The statements here challenged are more appropriately analogous to those in Kroll v. United States, 5 Cir. 1970, 433 F.2d 1282, cert denied, 402 U.S. 944, 91 S.Ct. 1616, 29 L.Ed.2d 112, and Smith v. United States, 5 Cir. 1956, 234 F.2d 385, which firmly established that a passing reference to the fact that evidence is "uncontradicted" is not *per se* prejudicial.

Furthermore, defense objections to both remarks were here immediately entered. The first was sustained, the second prompted the prosecutor to discontinue that line of argument, and no further mention of appellants' deciding not to testify was made. Finally, it must be remembered that the judge unequivocally ordered the jury to give no weight whatsoever to appellants' failing to take the stand; in both *Chapman, supra,* and *Griffin, supra,* the trial judges themselves referred to the defendants' silence. Under the circumstances of this case, with each of these factors being present, we are unable to see how appellants were prejudiced by the prosecutor's remarks.

## VI.

Finally, appellants argue that their motions to dismiss the indictments and for a directed verdict of acquittal should have been granted because the government's use at the criminal trial of evidence obtained at and from the bankruptcy proceedings was constitutionally infirm. As to appellant Goodwin, we disagree. As to appellant Nail, however, we agree that the evidence should have been excluded.

Appellants' claims revolve around certain protective features of the bankruptcy statutes. During the Mr. Mod Shop, Inc. bankruptcy proceedings in 1969, both testified at a hearing examination of witnesses under 11 U.S.C. § 21(a). Appellants claim that because the hearing was a continued first meeting of creditors, the immunity-granting provisions of 11 U.S.C. § 25(a)(10) bar use of the evidence that convicted them. The issue is not so simple.

### A. The Factual Setting

It appears to be uncontradicted that all of the government's evidence at the criminal trial was derived from the bankruptcy proceedings testimony but that none of the bankruptcy testimony itself was introduced. Thus, in the legal argot of the day, the government has

made "derivative use" of appellants' testimony.

There seems to have been nothing unusual about the actual process of taking the bankruptcy testimony. We find, for example, no reference to any mention of "immunity" having been granted to appellants by the bankruptcy referee. Every first-blush appearance is that appellants voluntarily appeared and testified. It seems, in fact, that the bankruptcy examination of witnesses was little more than a garden-variety testimony-taking session. Appellant Nail, however, points to one exchange that she insists establishes that she did not testify voluntarily:

"Q   And you realize that this Court has the power to subpoena the records of that bank to find out if your testimony is correct, don't you, Mrs. Nail?

A   Yes.

Q   And you also realize, do you not, that if we discover that you're not telling the truth, that you may be liable for perjury in this Court? Do you understand that?

A   I think so.

Q   Now, is it still your testimony that you took that money out in cash?

By the Referee:

Did you take it out in cash?

The Witness:

*Do I have to tell all these personal things about myself?*

By the Referee:

It's not personal. We're talking—

Mr. Summers [Attorney for Mr. Goodwin and Mr. Mod Shop, Inc.]:

He's mentioned perjury. I'm going to instruct—to object and *instruct her not to answer it on the grounds it might incriminate her.*

By the Referee:

It has to be a real danger. *She just can't say it might incriminate her.* The danger must be real.

Mr. Summers:

I don't think—

The Witness:

This doesn't have anything to do with the Mod Shop. *This is my own little personal—*

By the Referee:

Mrs. Nail, you were an officer of the corporation, and the purpose of this examination is to try to ascertain the true ownership of this automobile, whether or not the automobile was purchased with funds of the corporation, whether or not the real estate was purchased with funds of the corporation.

The Witness:

It was not, absolutely.

By the Referee:

And I think—Well, that's what we're trying to establish, and I think all the questions are relevant and *I'm going to ask you to answer the questions truthfully, and I'm going to order you to do so.* I mean we're not trying to embarrass you in any way; we're trying to get at the real facts. If you will do that, if you will cooperate with us, I think everything will be all right.

Mr. Summers:

We have no objection to cooperation, but if she can't remember the exact amount, exactly what she did with it, we're not going to—She's testified that she's used it, she can't testify what exactly—exactly who she paid it to; she testified she didn't give it to Goodwin. But the

—

The Witness:

I might still have it.

Mr. Summers:

But the point is—just a minute—the point is, I don't think since Mr. Friend has injected the note of perjury if it gets off relevancy she's— *She has an inalienable right to refuse to answer,* and on those grounds—

By the Referee:

I think the questions have been relevant.

Mr. Summers:

As long as they're relevant.

By the Referee:

They're relevant to the issues. *I'm going to overrule your objection and order her to answer."*

Appellant Nail argues that aside from her claim of statutory immunity, discussed *infra*, the above colloquy reveals that she attempted to assert her Fifth Amendment privilege to decline to testify, that her will was overborne, and that any use of the evidence thus obtained, even derivatively, was unconstitutional. The government admits that her claim would be good if she was forced to testify over an assertion of her Fifth Amendment right to refuse to answer but argues that no coercion here occurred.

■ We view the dialogue set out above as revealing a laywoman who was attempting to assert some articulated right to resist answering certain questions, but who was interrupted, whipsawed, and finally ordered by the bankruptcy referee to answer the questions before she could fully set out her reasons for not wanting to answer. Although it is uncontradicted that attorney Summers was not representing Mrs. Nail at the examination, we nonetheless think his statements have some relevance to our analysis. The Fifth Amendment privilege to decline to testify is said to be personal to the witness and assertable only by the witness. *See, e. g.*, United States v. Ginsburg, 7 Cir. 1938, 96 F.2d 882, cert. denied, 305 U.S. 620, 59 S.Ct. 81, 83 L.Ed. 396. But in determining whether it has been asserted, the entire context in which the claimant spoke must be considered. Here, two intertwined objections were being discussed: one of legal relevance and one of constitutional dimension. Although Mrs. Nail never said *in haec verba*, "I wish to exercise my Fifth Amendment rights to decline to testify fur-

ther," the other participants clearly mentioned the privilege. Mrs. Nail could easily have thought that having her brother's attorney mention the privilege, *coupled with her own ambiguous attempts to avoid testifying,* was sufficient to raise whatever rights she was entitled to claim.

■ The question whether a constitutional privilege has been asserted should not depend on the claimant's having used precise or arcane legal phraseology. We deal here with a laywoman, not a skilled and eloquent lawyer versed in the subtle nuances of constitutional law. Furthermore, it is axiomatic that a waiver of constitutional rights is not lightly to be implied, and it seems clear that even the most feeble attempt to claim a Fifth Amendment privilege must be recognized:

"It is agreed by all that a claim of the privilege does not require any special combination of words. Plainly a witness need not have the skill of a lawyer to invoke the protection of the Self-Incrimination Clause. If an objection to a question is made in any language that a [questioner] may reasonably be expected to understand as an attempt to invoke the privilege, it must be respected . . .

. . . . . . .

". . . But the fact that a witness expresses his intention in vague terms is immaterial so long as the claim is sufficiently definite to apprise the [questioner] of his intention. As everyone agrees, no ritualistic formula is necessary in order to invoke the privilege."

Quinn v. United States, 1955, 349 U.S. 155, 162–164, 75 S.Ct. 668, 673–674, 99 L.Ed. 964, 972–973. *See also* Smith v. United States, 1949, 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264. Additionally, this Court requires that "[b]efore a man can be compelled to testify against himself, he must have a fair chance to exercise his right under the Fifth Amendment." Brock v. United States, 5 Cir. 1955, 223 F.2d 681, 685.

■ On the precise facts of this case, we find that Mrs. Nail's answers were "compelled" from her within the meaning of the Fifth Amendment and that therefore any use of that testimony, even derivatively, was improper in the later criminal proceeding. Although our holding does not prevent the government from retrying Mrs. Nail, no evidence obtained directly or indirectly from the compelled testimony may be used against her in any criminal prosecution. *See* United States v. Blue, 1966, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510.

■ Finding that appellant Nail's conviction rested on evidence obtained in violation of her Fifth Amendment right against self-incrimination, her conviction must be reversed. Appellant Goodwin, however, having never asserted his Fifth Amendment privilege, has no standing to complain of the derogation of Mrs. Nail's rights, *see, e. g.*, Bryson v. United States, 1969, 136 U.S.App.D.C. 113, 419 F.2d 695.

### C. The Statutory Claim

Section 25(a)(10) today provides a broad immunity:

"The bankrupt shall . . . (10) at the first meeting of his creditors, at the hearing upon objections, if any, to his discharge and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate or the granting of his discharge; *but no testimony, or any evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding,* except such tes-

timony as may be given by him in the hearing upon objections to his discharge . . . ."

11 U.S.C. § 25(a) (1970 amend.) [emphasis added]. But at the time appellants testified, the immunity statute was much narrower:

"The bankrupt shall . . . (10) at the first meeting of his creditors, at the hearing upon objections, if any, to his discharge and at such other times as the court shall order, submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate or the granting of his discharge; *but no testimony given by him shall be offered in evidence against him in any criminal proceeding* except such testimony as may be given by him in the hearing upon objections to his discharge . . . ."

11 U.S.C. § 25(a) (1938 amend.) [emphasis added].

■ Assuming *arguendo* that appellants, as corporate officers, can claim the limited immunity granted bankrupts by the statute,[5] we nevertheless find that they cannot prevail under the statute.

■■ It must be remembered that the bankruptcy testimony here utilized was not obtained in appellant Goodwin's case over an assertion of the Fifth Amendment privilege not to testify nor in either appellants' case from an actual granting of immunity. Absent the statute, there would have been no occasion even to consider whether any immunity whatsoever existed. It must also be remembered that the part of the Fifth Amendment with which we are here con-

---

5. That this assumption is both correct and applicable to the facts of the instant case is not entirely clear. *Compare* In re Bush Terminal Co., 2 Cir. 1939, 102 F.2d 471, *with* United States v. Castel- lana, 2 Cir. 1965, 349 F.2d 264, 274; United States v. Weissman, 2 Cir. 1955, 219 F.2d 837; People v. Lay, 193 Mich. 17, 159 N.W. 299 (1916).

cerned provides only that "No person . . . shall be compelled in any criminal case to be a witness against himself". The privilege may be waived if it is not asserted. United States v. Monia, 1943, 317 U.S. 424, 63 S.Ct. 409, 87 L. Ed. 376. Furthermore, it is undisputed that because the immunity granted by the old version of section 25(a)(10) was not a complete immunity, those protected by it remained free to claim their Fifth Amendment privilege. McCarthy v. Arndstein, 1924, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158. If a person chose not to "stand on the Fifth," he could claim only as much protection from use of the testimony adduced as the statute itself granted. Absent some affirmative granting of immunity by the person taking the testimony, the witness faced two alternatives under the older version of the statute: he could choose to testify freely and then later claim whatever protection the statute afforded; or he could refuse to testify on the grounds that the answers sought might be incriminating.

■■■ This would be an entirely different case if appellants were appealing from a contempt citation entered upon a refusal to testify on the ground that the statute granted only "pure use" immunity, rather than "use and derivative use" immunity or "transactional" immunity. When the Fifth Amendment is asserted, it can be overborne only by a grant of immunity coextensive with the scope of the privilege itself—"pure use" immunity would be insufficient. See Kastigar v. United States, 1972, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212; Zicarelli v. New Jersey State Comm. of Investigation, 1972, 406 U.S. 472, 92 S. Ct. 1670, 32 L.Ed.2d 234. See also Piccirillo v. New York, 1971, 400 U.S. 548, 91 S.Ct. 520, 27 L.Ed.2d 596. But we see no constitutional infirmity in the Congress having chosen by the old version of section 25(a)(10) to grant only a very limited immunity to witnesses who fail to assert their Fifth Amendment rights and who have not formally been granted or promised any sort of immunity.

The plain language of the statute was complied with. We find that that application of the statute to appellants' case was not unconstitutional and that therefore this statutory immunity claim must fail. Appellant Goodwin's conviction is thus affirmed.

Appellant Nail's conviction, however, was impermissibly obtained through the use of evidence obtained from testimony compelled from her over her assertion of the Fifth Amendment, so her conviction must be reversed. We must never forget that the Fifth Amendment is a sacred privilege, and it is not to be defiled by requiring use of a password to cross its protective portals. Its invocation need not be raucously proclaimed with any requisite number of decibels. It is enough if the person hearing the testimony receives the message by whatever form of transmission.

Affirmed in part, reversed in part.[6]

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is Denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local, Fifth Circuit Rule 12) the Petition for Rehearing is Denied.

---

6. In disposing of this appeal we have not considered whether a *Miranda*-type warning might have been required at the bankruptcy proceeding examination of witnesses. *See generally* 1 Collier on Bankruptcy ¶ 7.21 at 1013–25; 2 Collier on Bankruptcy ¶¶ 21.14, 21.15 at 313–19. *See also* United States v. Deaton, 5 Cir. 1972, 468 F.2d 541. The issue has not been raised on appeal and was apparently not presented to the court below.