**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Morris O'Neal DAVIS,
Defendant-Appellant.**

No. 80–9083.

United States Court of Appeals,
Fifth Circuit.
Unit B

Sept. 14, 1981.

Rehearing Denied Jan. 18, 1982.

154

Fred Blanton, Birmingham, Ala., for defendant-appellant.

Holly L. Wiseman, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before FRANK M. JOHNSON, Jr. and HATCHETT, Circuit Judges, and SCOTT *, District Judge.

HATCHETT, Circuit Judge:

Morris O'Neal Davis appeals his conviction and sentence for possession with intent to distribute marijuana and possession with intent to distribute quaaludes, both in violation of 21 U.S.C. § 841(a)(1). Davis complains (1) that the district court committed plain error by giving certain jury instructions; (2) that multiple sentences for the simultaneous possession of two drugs are not authorized by the statute; and (3) that the sentence imposed under one count exceeded the punishment permitted by statute. We affirm Davis's conviction and multiple sentences, but because the trial court imposed a sentence on one count in excess of that permitted by statute, we remand with instruction to resentence Davis.

* District Judge of the Middle District of Florida, sitting by designation.

## BACKGROUND

Davis was convicted in the district court on two counts of possession of a controlled substance in violation of 21 U.S.C. § 841(a)(1). Count I charged Davis with possessing with intent to distribute marijuana, a Schedule I controlled substance. Count II charged Davis with possessing with intent to distribute quaaludes, a Schedule II controlled substance. The trial court sentenced Davis under Count II to one year confinement, followed by a special parole term. The district court sentenced Davis under Count I to six years confinement, to be followed by a special parole term. Upon Davis's release from the confinement imposed under Count II, the period of incarceration under Count I would begin.

Davis raises three points on appeal. First, he contends that a jury instruction on specific intent, to which no objection was raised at trial, was so narrow in scope as to constitute plain error. Second, Davis argues that although he was in possession of two drugs, this possession constituted one act, i. e., possession of a controlled substance. Relying on *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), Davis contends that imposition of consecutive sentences for simultaneous possession of two drugs is not authorized by 21 U.S.C. § 841(a). Finally, Davis contends that the trial court's sentence of six years incarceration for possession of marijuana under Count I exceeds the punishment permitted by 21 U.S.C. § 841(b)(1)(B).

The government argues that the jury instruction on specific intent was adequate, and that defense counsel actually requested the court to apply it to a third count not challenged on appeal as well as to Counts I and II. Relying on the categorizing of drugs into four schedules in 21 U.S.C. § 812, which places marijuana and quaaludes in different schedules, the government argues that consecutive sentences for simultaneous possession of marijuana and quaaludes is authorized by statute. Finally, the government agrees with Davis that the trial court imposed a sentence under Count I in excess of that permitted by statute.

## ISSUES

We must determine (1) whether the trial court committed plain error in giving the challenged jury instruction; (2) whether Congress intended, in enacting 21 U.S.C. § 841, to permit multiple sentences for a concurrent possession of two different drugs; and (3) whether the district court erred in imposing a sentence in excess of the punishment allowed by statute.

## THE JURY INSTRUCTION

As a part of his defense at trial, Davis pointed out that he had worked as an informant for drug enforcement agency officials. Davis contended that on the day of his arrest, he was merely setting up a drug sale for purposes of arresting the sellers. In his charge to the jury, the trial court instructed as follows:

> To rebut . . . the element of possession with intent to distribute, and also to rebut the element of willfulness . . . the defendant has offered to you evidence that he was working as an undercover agent for law enforcement officials . . . and that any possession of a controlled substance . . . was in that capacity. That evidence is relevant to your determination of the defendant's state of mind. . . . [Q]uite clearly a person would lack the requisite state of mind under Count One or Count Two if indeed he were authorized to act on behalf of law enforcement officials and was so acting at the time.

Davis complains that this charge on intent is too narrow in that it limits the jury in its consideration of the facts concerning Davis's activities with law enforcement agencies. Davis contends this charge states that law enforcement officials had to authorize him to act and he had to act under such authorization in order for the jury to find lack of mental intent.

██ Davis did not object to this instruction at trial. This court will not take note of error raised for the first time on appeal unless our refusal to do so would result in manifest injustice. *Calmaquip En-*

gineering West Hemisphere Corp. v. West Coast Carriers Limited, 650 F.2d 633 (5th Cir. 1981). Read as a whole, the instruction does not unduly restrict the jury to the question of Davis's actual authority to act on behalf of government officials. Rather, the wording allows the jury properly to consider Davis's mental intent. While the instruction could have been worded more clearly, it was not so prejudicial as to result in a manifest injustice.

## THE MULTIPLE SENTENCING

We now turn to the more difficult question of whether Congress intended to allow consecutive sentencing for a simultaneous possession of two types of drugs. "If a federal court exceeds its own authority by imposing multiple punishments not authorized by Congress, it violates not only the specific guarantee against double jeopardy, but also the constitutional principle of separation of powers in a manner that trenches particularly harshly on individual liberty." Whalen v. United States, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436–1437, 63 L.Ed.2d 715 (1980).

The government argues that the test enunciated in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), applies to this case and authorizes the multiple sentences imposed upon Davis. This assertion is erroneous. Blockburger's conviction resulted from a single sale of narcotics in violation of two statutory provisions, 26 U.S.C. § 692 prohibiting the sale of a drug not in the original stamped package, and 26 U.S.C. § 696 prohibiting the sale of a drug not in pursuance of a written order of the purchaser. He received consecutive sentences for violation of these stat-

utes. The Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182. Applying this test, the Court found that although there was only one sale, two offenses were committed because two statutory sections were violated,[1] and therefore consecutive sentencing was in order.[2]

The Court's latest expression of the Blockburger rule is found in Albernaz v. United States, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), also relied upon by the government. Albernaz was convicted on separate counts of conspiracy to import marijuana in violation of 21 U.S.C. § 963 and conspiracy to distribute marijuana in violation of 21 U.S.C. § 846. Consecutive sentences were imposed. Applying the Blockburger test, the Court found that conviction of each section required elements of proof not required by the other, and therefore Congress had intended to permit the imposition of consecutive sentences for violation of these two sections.

Both Blockburger and Albernaz are inapposite to our discussion because both cases involve a defendant charged with violating two statutes by the commission of a single act. Davis was charged with violating only one statute proscribing the possession of a controlled substance. We must determine whether Davis's simultaneous possession of two drugs constituted two "acts" for which multiple sentences may be imposed.

1. The Blockburger test has been applied to several offenses enumerated in one statutory section as well as to offenses named in separate sections. See, e. g., United States v. Goodman, 605 F.2d 870 (5th Cir. 1979); Normandale v. United States, 201 F.2d 463 (5th Cir.), cert. denied 345 U.S. 999, 73 S.Ct. 1141, 97 L.Ed. 1405 (1953).

2. The Fifth Circuit was faced with a similar situation in United States v. Hernandez, 591 F.2d 1019 (5th Cir. 1979). The defendant was charged with possession with intent to distrib-

ute and actual distribution of heroin in violation of 21 U.S.C. § 841(a)(1). The only evidence of the possession was the sale which constituted the distribution. The en banc court held that in this narrow set of circumstances, the two crimes merge into a single offense for which only one sentence may be imposed. In Hernandez, proof of one offense was a prerequisite to proof of the other. In this case, proof of each offense is independent of proof of the other.

Davis's argument regarding consecutive sentencing raises a constitutional as well as a statutory issue. The Supreme Court has recently debated the constitutional theory behind use of multiple sentencing. In *Whalen*, the majority opinion stated, "The Double Jeopardy Clause *at the very least* precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so." 445 U.S. at 689, 100 S.Ct. at 1436. (emphasis added). Justice Blackmun, in a separate opinion, wrote: "I believe that the Court should take the opportunity presented by this case . . . to hold clearly that the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed." 445 U.S. at 698, 100 S.Ct. at 1441.

Justice Blackmun's suggestion was adopted by the Court in *Albernaz*, where it stated, "[T]he question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended . . . to impose multiple punishment, imposition of such sentences does not violate the Constitution." 450 U.S. at 344, 101 S.Ct. at 1145.

■ It thus appears that the Supreme Court has decided that Congress can never violate the double jeopardy clause in imposing criminal penalties. Rather, the double jeopardy clause is aimed at prosecutors and judges to ensure that a defendant is not placed in jeopardy twice for the same offense. The *Blockburger* test, then, is merely a tool used to divine legislative intent, rather than to test the constitutionality of statutory punishments. This reading of the *Albernaz* majority opinion is bolstered by language in a concurring opinion by three Justices which takes exception to the statement quoted above: "No matter how clearly it spoke, Congress could not constitutionally provide for cumulative punishments unless each statutory offense required proof of a fact that the other did not under the criterion of *Blockburger*." 450 U.S. at 345, 101 S.Ct. at 1145–46.

■ Although we are not called upon by the facts before us to apply the *Blockburger* test, we nevertheless face a similar constitutional question. Following *Albernaz*, if we find that Congress intended multiple sentences to be imposed for simultaneous possession of different types of drugs, any question of violation of the double jeopardy clause is foreclosed.

More applicable to our present discussion than *Blockburger* is *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), the case Davis relies upon. Bell received consecutive sentences on two counts of violating the Mann Act, 18 U.S.C. §§ 2421–2424, making it unlawful to transport in interstate commerce "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose." Bell transported two women on the same trip and in the same vehicle, and therefore claimed that he had committed only a single offense and could not be subjected to cumulative punishment. The Court stated that while Congress could constitutionally make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman, the question was whether it was Congress's intent to do so. Finding that the statute could be read as imposing either single or multiple punishment, the Court found in favor of the defendant. The Court stated,

> When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. . . . It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of harsher punishment.

349 U.S. at 83, 75 S.Ct. at 622.

The Fifth Circuit followed *Bell* in *United States v. Deaton*, 468 F.2d 541 (5th Cir.

1972), *cert. denied*, 410 U.S. 934, 93 S.Ct. 1386, 35 L.Ed.2d 597 (1973). Deaton was convicted and given multiple sentences for violating 18 U.S.C. § 1072, which makes it unlawful to harbor or conceal "any prisoner after his escape from the custody of the Attorney General or from a federal penal or correctional institution." Deaton harbored two escapees at the same time. Citing *Bell* for the rule of lenity, the Fifth Circuit held that the use of the adjective "any" and a singular noun and pronoun was "not sufficient authority for a judicial pronouncement that Congress clearly intended that the number of sentences a man may be given for a single course of action of concealment could be determined by adding up the number of escapees concealed." 468 F.2d at 546.

In both *Bell* and *Deaton*, the Courts were required to review a single federal statute to determine whether Congress intended to treat certain conduct as one act or multiple acts. In *Bell*, the Court determined that Congress intended to treat transportation of several women as one act. In *Deaton*, the court determined that Congress intended to treat the concealment of several escapes as one act. It is our task to review the statute under which Davis was convicted to determine whether Congress intended to treat simultaneous possession of two controlled substances as one act or multiple acts for purposes of punishment.

■ In reviewing 21 U.S.C. § 841 to determine Congressional intent, we are guided, as were the *Bell* and *Deaton* Courts, by the rule of lenity. "This policy of lenity means that the [courts] will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner v. United States*, 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958) (holding that the single discharge of a shotgun wounding two federal officers constituted only a single act of assault). "The [Supreme] Court has emphasized that the 'touchstone' of the rule of lenity 'is statutory ambiguity.' . . . Where

Congress has manifested its intention, [the courts] may not manufacture ambiguity in order to defeat that intent." *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205, 211 (1980) (citation omitted). "[T]he principle of lenient construction does not exist to 'destroy the spirit and force of the law which the legislature intended to enact.' " *United States v. Noe*, 634 F.2d 860, 862 (5th Cir. 1981) (quoting *American Tobacco Co. v. Werckmeister*, 207 U.S. 284, 293, 28 S.Ct. 72, 75, 52 L.Ed. 208 (1907)). The rule of lenity may be applied only if, after reviewing all sources from which legislative intent may be gleaned, the statute remains truly ambiguous. *Noe.* *See United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

■ Davis was convicted for violation of section 401 of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 841. This statute reads, in pertinent part:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; . . .

Davis points to *Bell*, which held that the statute proscribing the transportation of "any woman or girl" intended to create only one punishable offense for the simultaneous transportation of several women or girls. Likewise he points to *Deaton*, which held that a statute proscribing concealing "any prisoner" intended to create only one punishable offense for concealing several prisoners. Davis argues that the statute proscribing possession of "a controlled substance" similarly creates a single punishable offense for the possession of several controlled substances. On its surface, this argument is persuasive. We are bound, however, to review all sources from which legislative intent may be gleaned. We therefore turn to the legislative history of the Comprehensive Drug Abuse Prevention and Control Act.

The stated legislative purpose in passing the Act is as follows:

The legislation is designed to deal in a comprehensive fashion with the growing menace of drug abuse in the United States (1) through providing authority for increased efforts in drug abuse prevention and rehabilitation of users, (2) through providing more effective means for law enforcement aspects of drug abuse prevention and control, and (3) by providing for an overall balanced scheme of criminal penalties for offenses involving drugs.

H.R.Rep.No.91–1444, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Ad. News 4566, 4567. The Congressional intent in setting criminal penalties for drug offenses was to "give maximum flexibility to judges, permitting them to tailor the period of imprisonment, as well as the fine, to the circumstances involved in the individual case." *Id.* at 4576. This statement of purpose calls for a broad reading of the statutory provision governing offenses and penalties, 21 U.S.C. § 841. Far from providing judges with flexibility in sentencing, reading the statutory words "a controlled substance" as meaning "all controlled substances possessed simultaneously" would greatly restrict judges in their sentencing capacity. In a case involving simultaneous possession of a large number of different drugs, the trial judge would be limited in sentencing to the punishment set by statute for possession of only one drug. This would hardly allow the judge to tailor the penalty to fit the seriousness of the offense.

We find further evidence of Congress's intent in another section of the legislative history. Noting that since 1914 Congress had enacted more than fifty pieces of legislation regarding control of narcotics and dangerous drugs, the Congress stated,

> This plethora of legislation has necessarily given rise to a confusing and often duplicative approach to control of the legitimate industry and to enforcement against the illicit drug traffic. This bill collects and conforms these diverse laws in one piece of legislation based upon new scientific information, the restructured

Federal law enforcement efforts under Reorganization Plan No. 1 of 1968, and greater information concerning the scope of the problem.

*Id.* at 4571.

One of the diverse laws collected into the Act was 26 U.S.C. § 4704 (1954). Before reorganization of the U.S. Code in 1954, this provision was found in 26 U.S.C. § 2553(a), which was construed by the Fifth Circuit in *Normandale v. United States*, 201 F.2d 463 (5th Cir.), *cert. denied*, 345 U.S. 999, 73 S.Ct. 1141, 97 L.Ed. 1405 (1953). That statute made it unlawful to "purchase, sell, dispense, or distribute opium, isonipecaine, coco leaves, opiate, or any compound, salt, derivative, or preparation thereof, except in or from the original stamped package." 201 F.2d at 464. The Fifth Circuit held that Congress intended in passing this statute to provide for multiple sentencing for possession of heroin hydrochloride and raw opium. It is true that the older statute, by listing the proscribed narcotics separately, provided separate statutory segments requiring use of the *Blockburger* test,[3] while the current statute lumps all drugs together under the term "a controlled substance." It would be an anomaly, however, to find that the newer statute, which subsumed the older statute, is less flexible, especially in light of Congress's stated intent of providing trial judges with more flexibility in sentencing.

■ We therefore find that the purpose of the Act is to provide for multiple sentencing for simultaneous possession of different types of drugs. When Congress set penalties for possession of "a controlled substance," it intended to permit trial courts to penalize possession of "each" controlled substance.

The government further relies on *United States v. Pope*, 561 F.2d 663 (6th Cir. 1977), in which the Sixth Circuit allowed multiple sentencing for possession of heroin and methadone. The Sixth Circuit reasoned that because heroin is a Schedule I controlled substance and methadone is a Schedule II

**3.** See footnote 1.

controlled substance, Congress intended to allow multiple sentencing. We decline the government's invitation to follow that reasoning in this case. It is true that 21 U.S.C. § 812 defines four schedules of drugs. The purpose of the scheduling, however, is not solely to set penalties for violation, but rather to control the substances themselves.

> The [Act] is designed to improve the administration and regulation of the manufacturing, distribution, and dispensing of controlled substances by providing for a 'closed' system of drug distribution for the legitimate handlers of such drugs. Such a closed system should significantly reduce the widespread diversion of these drugs out of legitimate channels into the illicit market, while at the same time providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control.

[1970] U.S.Code & Cong.News 4566, 4571–72.

The main difference between Schedule I and Schedule II drugs lies in the fact that Schedule I drugs have no medical use and Schedule II drugs have accepted medical uses. As far as the heinous effect of abuse of these drugs, however, there is no difference. It would be curious to allow single sentencing for possession of heroin and marijuana simply because they happen to fall in the same schedule, yet allow multiple sentencing for possession of marijuana and quaaludes, simply because they fall in different schedules.

We find further support for our rejection of the *Pope* rationale in 21 U.S.C. § 841(b) which sets penalties for possession of controlled substances. This statute sets higher penalties for possession of "Schedule I or II narcotic drugs" and lesser penalties for possession of "Schedule I or II non-narcotic drugs." This lumping together of Schedule I and II drugs and then distinguishing narcotic from non-narcotic drugs works to belie the theory in *Pope* that Congress intended to allow multiple sentencing only for drugs in different schedules.

■ We find that Congress intended, in enacting 21 U.S.C. § 841, to provide trial judges with maximum flexibility in sentencing, and therefore intended to permit separate punishment for possession of each controlled substance. Simultaneous possession of marijuana and of quaaludes constitutes two acts which violate one statute, and consecutive sentencing is appropriate.

## THE EXCESSIVE PUNISHMENT

■ We finally come to one point in this appeal on which all parties are in agreement, the question of whether the punishment imposed by the trial judge for possession of marijuana, six years incarceration, exceeded the punishment allowed by statute. The statute which sets penalties, 21 U.S.C. § 841(b)(1)(B) reads: "In the case of a controlled substance in schedule I and II which is not a narcotic drug ... such person shall be sentenced to a term of not more than five years, a fine of not more than $15,000, or both." While a harsher sentence is provided for an offender having one or more prior convictions, the record shows that this was Davis's first offense. The trial judge sentenced Davis to six years confinement for possession of marijuana, while the maximum punishment allowed by statute is five years. We therefore remand this case for resentencing in accordance with 21 U.S.C. § 841(b)(1)(B).

## CONCLUSION

Because we find that the jury charge in question did not constitute plain error, we uphold Davis's conviction. Because we find that Congress intended to permit multiple punishments for simultaneous possession of different drugs, we uphold Davis's multiple sentences. Because we find that the trial judge erred in imposing a sentence in excess of that allowed by statute, we vacate Davis's sentencing under Count I of the indictment and remand for resentencing.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.