7 F.3d 234
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John L. MORGAN, Plaintiff-Appellant,
v.
CITY OF COLUMBUS, Jane Schoedinger, G.R. Lorello, and Dana
G. Rinehart, Defendants-Appellees.
 No. 92-4086.
 United States Court of Appeals, Sixth Circuit.
 Oct. 1, 1993.
 
 On Appeal from the United States District Court for the Southern District of Ohio, No. 90-00780, Beckwith, J.
 S.D.Ohio
 AFFIRMED.
 Before: MILBURN and GUY, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff John L. Morgan appeals from the district court's grant of summary judgment in favor of the defendants, the City of Columbus, Ohio, and several city officials, in this civil rights action brought under 42 U.S.C. § 1983. Plaintiff alleged that he was discharged from his position as a city official for exercising his Fifth Amendment right against self-incrimination. On appeal, the issues are (1) whether the district court erred in concluding that plaintiff failed to assert his Fifth Amendment right before an investigating body; (2) whether the district court erred in concluding that plaintiff was not required to waive his Fifth Amendment right before an investigating body; (3) whether the district court erred in concluding that plaintiff could not hold the defendant city and defendants Dana G. Rinehart, G. Raymond Lorello, and Jane Schoedinger liable in their official capacities under § 1983; and (4) whether the district court erred in concluding that plaintiff could not hold defendants Rinehart and Lorello liable in their personal capacities under § 1983. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Plaintiff, an attorney and a former police officer for the City of Columbus, Ohio, was appointed deputy development director for the City of Columbus on January 24, 1988. In the fall of 1988, at the request of the Columbus City Council, several local law enforcement agencies and the Federal Bureau of Investigation initiated an investigation into plaintiff's alleged misconduct committed in 1983 while he was a police officer. The investigation was initiated in part as a result of an article that appeared in the Cleveland Plain Dealer and sought to determine whether plaintiff acted illegally while conducting an alleged surveillance of the Pardues, a family residing in Columbus.
 
 
 3
 As part of the investigation, plaintiff was scheduled to appear before the Internal Affairs Bureau of the Columbus Police Department on October 21, 1988 (the "IAB proceeding"). During the ensuing days before the IAB proceeding, plaintiff was advised by legal counsel that he should not testify on the basis of his Fifth Amendment right against self-incrimination. A day before the IAB proceeding, plaintiff expressed his unwillingness to testify to his superior, G. Raymond Lorello. Lorello later described the conversation as follows:
 
 
 4
 John and I discussed his request to go before the internal affairs committee. He had some concerns about violation of his actual rights. I said I don't know what all the issues are. I can appreciate your concerns about your rights. He said that they had given him a list of questions, and I said how many questions, and to the best of my knowledge, there was either 10 or 12 questions that he relayed to me and I said okay, of those 10 or 12, how many can you answer without violating your rights, and I remember somewhere in the area of five to seven without violating--getting into areas of sensitivity. And I told him, John, that's all you need to do. Just answer those that you can. I'm not asking you to answer things that you feel would incriminate.
 
 
 5
 * * *
 
 
 6
 * * *
 
 
 7
 John knew fully what my policy was. He also knew the ramifications, and we left on that basis because I can remember this conversation like it happened yesterday. I said, John, all I'm looking for is cooperation. I'm not asking you to violate any of your actual rights, but if you've got 10 to 12 questions and you can answer 7 of them by your own admission without getting into the area of violating your rights, then answer them. If you show no cooperation, I have no choice but to terminate because I have to at least send a signal to all my people, whether you're a department deputy or a laborer or whatever, we all work under the same rules. And he clearly understood that and he acknowledged that. Basically what he told me, you do what you have to do and I'll do what I have to do and I said fine.
 
 
 8
 J.A. 45--Lorello deposition, pp. 7-9.
 
 
 9
 Plaintiff appeared and was represented by three attorneys at the IAB proceeding. Also present were Sergeant William Smith, who conducted the interview, and Sergeant Robert Mulcahy. The following is an account of the entire hearing:
 
 
 10
 Q. Mr. Morgan, would you please identify yourself?
 
 
 11
 A. John L. Morgan.
 
 
 12
 Q. Mr. Morgan, are you aware that this interview is being tape recorded?
 
 
 13
 A. Yes, I am.
 
 
 14
 Q. Mr. Morgan, the purpose of this interview is to have you answer questions concerning the investigation that you conducted of the Pardue family during the 1983 campaign of Dana Rinehart. At this point are you willing to answer questions?
 
 
 15
 A. No, I am not.
 
 
 16
 Q. Do you want to make a statement?
 
 
 17
 A. At the Mayor's directive, I'm meeting with Internal Affairs relative to the allegations about a 1983 investigation of the Pardue family. This investigation was apparently initiated as a result of an interview I was directed by the Mayor and his staff to give to Gary Webb of the Cleveland Plain Dealer. Prior to giving this interview, I consulted with and obtained legal advice from the Columbus City Attorney. The Plain Dealer article which resulted from that interview was slanted, inaccurate, misleading and incomplete.
 
 
 18
 Since the publication of that article, apparently an uncertain number of investigations including those by the Columbus Division of Police, the Columbus Public Safety Department, the Columbus City Attorney's Office, the Columbus City Council and the Federal Bureau of Investigation have been initiated. Some of the very same offices that directed me and from whom I received legal advice have initiated or are now conducting the investigations. Furthermore, since the publication of the article, I have received numerous communications from the Mayor, several aides to the Mayor, Councilman John P. Kennedy, police officers involved in the investigation, police officers not involved in the investigation, representatives of the Fraternal Order of Police and others. All of this has led to an extremely confusing and contradictory situation that leaves me unable to respond to questions at this time. I appreciate the countless communications from friends and others throughout the community who know me and have given me their support. That is my statement in its entirety today.
 
 
 19
 Q. Mr. Morgan, would you be willing to turn over to us a copy of the tape recording that you had with Mr. Gary Webb of the Plain Dealer?
 
 
 20
 A. I have nothing further to say today.
 
 
 21
 Q. Thank you.
 
 
 22
 J.A. 22-23.
 
 
 23
 Following the IAB proceeding, Mr. Keith Henry, executive assistant to the mayor of Columbus, called plaintiff's legal counsel, inquiring why plaintiff refused to cooperate with the investigation. As later set forth in an affidavit, plaintiff's counsel told Henry the following:
 
 
 24
 I guess really simply, you know, in representing our client the thing that we're concerned about, if there is any forum out there [that] wants to take a slant on this that how something to do with any sort of criminal charges as to him, take any slant on that there's certainly no advantage for him to be talking further than he already has in the Plain Dealer Interview. And that's the reason he's been advised not to speak on the subject.
 
 
 25
 * * *
 
 
 26
 * * *
 
 
 27
 As long as someone is out on some witch hunt or--and it may be remote or it may not be--I have no idea what forces are at play there but as long as someone is trying to trip him up or has that potential then it--we believe that it is in his best interest not to talk.
 
 
 28
 J.A. 86.
 
 
 29
 City officials also contacted plaintiff after the IAB proceeding in an effort to urge him to cooperate with the investigation. However, plaintiff continually stated that he would not answer questions. Then plaintiff was informed by the mayor of Columbus, Dana G. Rinehart, that if he did not cooperate with the investigation, he faced either termination or a permanent leave of absence. Plaintiff, however, refused to change from his position. Accordingly, plaintiff was terminated by Lorello, his superior, on October 25, 1988, on the grounds of insubordination for his "refusal to answer any questions of or otherwise cooperate with Internal Affairs Bureau investigators."
 
 B.
 
 30
 Plaintiff filed this action alleging that he was discharged for asserting his Fifth Amendment right against self-incrimination. In his complaint, plaintiff asserted a federal claim under 42 U.S.C. § 1983 and pendent state law claims for violation of public policy, breach of contract, promissory estoppel, and intentional infliction of emotional distress. Plaintiff sought a declaratory judgment and reinstatement to his former position with full back pay and benefits. In the alternative, plaintiff sought compensatory and punitive damages. Named as defendants in the action were Dana G. Rinehart, in his individual capacity and in his official capacity as Mayor of the City of Columbus; G. Raymond Lorello, in his individual capacity and his official capacity as Director of the City of Columbus Development Department; Jane Schoedinger, Lorello's successor, in her official capacity as Director of the City of Columbus Development Department; and the City of Columbus.
 
 
 31
 Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). In their motion, defendants set forth four arguments. First, they argued that the city did not have a practice, policy, or custom of terminating employees who refuse to waive their Fifth Amendment right against self-incrimination. Second, defendants argued that city officials informed plaintiff that he was not required to answer questions which he believed would violate his constitutional rights and that so long as they did not require plaintiff to waive his constitutional rights, they were authorized to terminate plaintiff for his refusal to answer questions. Third, defendants argued that the action against the individual defendants in their official capacities was a suit against the city, and thus the individual defendants should be dismissed. Fourth, defendants argued that plaintiff's pendent state law claims should be dismissed if they prevail on their argument that a federal claim had not been established. Plaintiff filed a response to defendants' motion and also filed a motion for partial summary judgment for his § 1983 claim and his state law claims for violation of public policy and breach of contract.
 
 
 32
 The district court granted defendants' motion for summary judgment. It first concluded that in order to assert a Fifth Amendment right against self-incrimination, a person "must affirmatively assert the privilege to the appropriate tribunal at an appropriate time." Having found that the appropriate tribunal in this case was the Internal Affairs Bureau and that the appropriate time was only during the IAB proceeding on October 21, 1988, the district court concluded "as a matter of law that none of ... Plaintiff's responses could be construed as an attempt to claim or invoke the Fifth Amendment privilege...." The district court also concluded that any conversations that plaintiff and his counsel had with city officials who were not involved in the IAB proceeding were irrelevant "to the question of whether ... Plaintiff properly claimed the Fifth Amendment privilege at the critical time and place." The district court then considered whether public entities may discharge employees for refusing to answer questions concerning employment activity if the employees are not required to waive their constitutional rights in answering the questions. After concluding that they could, and after concluding that in this case plaintiff was not required to waive any constitutional rights during the IAB proceeding, the district court found that the discharge was not in violation of plaintiff's constitutional right under the Fifth Amendment.
 
 
 33
 Although the district court acknowledged that these conclusions were sufficient for it to grant defendants' summary judgment motion, the district court addressed the remaining arguments presented; namely, whether plaintiff could maintain a § 1983 action against the city, whether plaintiff could maintain a § 1983 action against defendants in their individual capacities and whether plaintiff's state law claims should be dismissed. As to the first issue, the district court concluded that a municipality may only be held liable under 42 U.S.C. § 1983 if the "execution of the government's policy or custom ... inflicts the injury." The district court then agreed with defendants that plaintiff failed to provide any evidence that the city had a policy, practice, or custom of requiring employees to relinquish their Fifth Amendment rights when confronted with questions concerning their official conduct.
 
 
 34
 As to the second issue, the district court concluded that because no causal link existed between defendant Rinehart's and defendant Schoedinger's actions and the injury claimed by plaintiff, those defendants could not be held individually liable. The district court also concluded that defendant Lorello could not be held individually liable, finding that Lorello did not require or even suggest that plaintiff waive his Fifth Amendment privilege against self-incrimination. As to the remaining issue, the district court concluded that because it granted summary judgment on plaintiff's federal claim, it need not exercise pendent jurisdiction over plaintiff's state law claims. Accordingly, the district court dismissed those claims without prejudice. This timely appeal followed.
 
 II.
 
 35
 We review a district court's grant of summary judgment pursuant to Fed.R.Civ.P. 56(c) de novo, using the same test utilized by the district court. See Faughender v. City of North Olmsted, Ohio, 927 F.2d 909, 911 (6th Cir.1991). Summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). The party moving for summary judgment bears the initial burden and need not support its motion with affidavits or other materials "negating" the opponent's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, "the burden on the moving party may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its burden of production, the nonmoving party then must go beyond the pleadings and by affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Id. at 324.
 
 
 36
 Upon review of all the evidence relevant to the motion for summary judgment, a district court should, after viewing the evidence in a light most favorable to the nonmoving party, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. at 248. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.
 
 A.
 Section 1983 provides as follows:
 
 37
 Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or Territory ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in action at law, suit in equity, or other proper proceeding for redress.
 
 
 38
 42 U.S.C. § 1983. In order to obtain relief under § 1983 plaintiff must satisfy two elements. First, plaintiff must show that he has been deprived of a right secured by the Constitution and the laws of the United States. Flagg Bros., Inc., v. Brooks, 436 U.S. 149, 155 (1978). Second, plaintiff must show that the deprivation was caused by defendants while acting under color of state law. Id. If both of these elements are not satisfied, relief under § 1983 is inappropriate.
 
 
 39
 Plaintiff alleged in his complaint that by being discharged for his refusal to answer questions relating to his alleged misconduct in 1983, he was deprived of his Fifth Amendment right against self-incrimination. In its opinion granting summary judgment in favor of defendants, the district court concluded that plaintiff's discharge did not deprive him of his Fifth Amendment right against self-incrimination because plaintiff failed to invoke that right at the time he was asked to respond to questions at the IAB proceeding. Plaintiff argues on appeal, however, that there is a genuine factual issue as to whether he asserted his constitutional right at the IAB proceeding. In support of that position, he argues that although he did not specifically mention his constitutional right at the IAB proceedings, he did indicate an interest in remaining silent.
 
 
 40
 We agree with the district court that plaintiff failed to assert his Fifth Amendment right at the IAB proceeding. The Fifth Amendment provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself." Though the amendment refers only to criminal cases, "[i]t has long been held that this prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.' " Minnesota v. Murphy, 465 U.S. 420, 426 (1984) (quoting Lefkowitz v. Turley, 414 U.S. 70, 77 (1973)). Thus, the privilege "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." McCarthy v. Arndstein, 266 U.S. 34, 40 (1924).
 
 
 41
 However, the privilege under the Fifth Amendment is not self-executing. Roberts v. United States, 445 U.S. 552, 559 (1980). Though a person claiming the privilege need not articulate any "special combination of words," Quinn v. United States, 349 U.S. 155, 162 (1955), and "even the most feeble attempt to claim a Fifth Amendment privilege must be recognized," United States v. Goodwin, 470 F.2d 893, 902 (5th Cir.1972), cert. denied, 411 U.S. 969 (1973), "a witness loses the privilege by failing to claim it promptly even though the information being sought remains undisclosed when the privilege is claimed." Garner v. United States, 424 U.S. 648, 654 n. 8 (1976) (citing United States v. Murdock, 284 U.S. 141, 148 (1931), disapproved on other grounds, Murphy v. Waterfront Comm'n, 378 U.S. 52 (1964)). Thus, a person may not later rely on the privilege if it was "not in some manner fairly brought to the attention of the tribunal which must pass upon it." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 113 (1927). See also United States v. Kordel, 397 U.S. 1, 10 (1970) ("[corporate officer's] failure at any time to assert the constitutional privilege leaves him in no position to complain now that he was compelled to give testimony against himself.").
 
 
 42
 When asked at the IAB proceeding whether he was willing to answer questions, plaintiff simply stated, "No, I am not." Furthermore, plaintiff stated that he was unable to respond to questions because of the "extremely confusing and contradictory situation." Had plaintiff "lacked the skill of a lawyer to invoke the Self-Incrimination Clause," Quinn, 349 U.S. at 162, we might have been inclined to agree with plaintiff that a genuine issue of fact exists as to whether he asserted his right at the IAB proceeding. However, plaintiff is an attorney and was also represented by three attorneys at the IAB proceeding. Surely, if plaintiff desired to assert his Fifth Amendment right he, either by himself or upon the prodding of his counsel, could have stated so. Yet, nowhere does plaintiff explain that he is refusing to answer questions on the basis of his Fifth Amendment right. Furthermore, we are not persuaded that plaintiff indicated that he wished to remain silent. To the contrary, plaintiff read into the record a statement explaining why he was not willing to answer questions, making no reference to his constitutional right.
 
 
 43
 We also agree with the district court that whether plaintiff asserted his Fifth Amendment right in his conversations with city officials prior to his discharge outside the context of the IAB proceeding is irrelevant. The protections of the Fifth Amendment are available when an individual is being asked to answer questions where the answers might later be used in future criminal proceedings against him. McCarthy v. Arndstein, 266 U.S. 34, 40 (1924). At no time during his conversations with city officials was plaintiff required to answer questions. Rather, the city officials were urging plaintiff to cooperate with the investigation or suffer termination. Thus, even if plaintiff expressed to the city officials that he was refusing to answer the questions because of his Fifth Amendment right, those assertions were not in response to questions. Therefore, the Fifth Amendment offered no protection to plaintiff at that time.
 
 B.
 
 44
 We now turn to the question of whether the discharge of plaintiff for his failure to answer questions at the IAB proceeding about conduct as a public official violated plaintiff's Fifth Amendment right. After having concluded that public employees can be discharged for refusing to answer questions concerning employment activity so long as the employee is not required to waive a constitutional right and having also concluded that in this case plaintiff was not required to waive his constitutional right at the IAB proceeding, the district court held that the discharge was permissible. Plaintiff argues, however, that a genuine issue of fact exists as to whether he was required to waive his Fifth Amendment right at the IAB proceeding. He argues that his responses to the questions that might have been posed at the IAB proceeding could have furnished a link in the chain of evidence leading to incrimination. He therefore argues that because he was not offered immunity, he was faced with the decision to either waive his constitutional right or be discharged.
 
 
 45
 Again, we agree with the district court that plaintiff was not deprived of a constitutional right. If a public employee refuses "to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself, the privilege against self-incrimination would not [be] a bar to his dismissal." Gardner v. Broderick, 392 U.S. 273, 278 (1968). In this case, plaintiff was asked to answer questions relating to his performance as a police officer in 1983. He refused. However, because he was not required to answer those questions that might have been incriminatory, but rather was only required to answer those questions which he did not believe would infringe on his constitutional rights, plaintiff was not required to waive his immunity. Accordingly, the Fifth Amendment posed no bar to his discharge.[1]
 
 III.
 
 46
 As plaintiff has failed to establish the first requirement of an action under § 1983, and thus cannot succeed in his action, it is not necessary for us to address the other issues raised by plaintiff in this appeal. Accordingly, the district court's grant of summary judgment for the defendants is AFFIRMED.
 
 
 
 [1]
 After having found that plaintiff was not required to waive any constitutional rights at the IAB proceeding, the district court further found that plaintiff did not ask the Internal Affairs Bureau or anyone else for immunity prior to the IAB proceeding. Plaintiff reads this statement as placing the burden upon plaintiff to raise the issue of immunity and argues that the burden is on the state to offer immunity, not vice versa
 While we decline to read the district court's statement in the manner suggested by plaintiff, we note that it would be incongruous to hold that a plaintiff must first request immunity before it may be offered. Immunity provides the state with a method of obtaining information from a witness who asserts his constitutional right against self-incrimination. Lefkowitz v. Turley, 414 U.S. 70, 84 (1973). Thus, there would be no need for a person protected by the Fifth Amendment to request immunity. Rather, if the state desires the information, then it would offer the protection.