El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
En esta ocasión debemos resolver si la posesión simul-tánea de las drogas conocidas como marihuana, cocaína y heroína constituye uno o tres delitos al amparo del Art. 404 de la Ley Núm. 4 de 23 de junio de 1971, conocida como la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. see. 2404. De igual forma, nos corresponde auscultar si a la Ley Núm. 4 (24 L.P.R.A. see. 2101 et seq.) le aplica la parte general del Código Penal de 2004 y, en particular, la figura del “concurso de delitos” regulada en los Arts. 78-79 de ese Código, 33 L.P.R.A. sees. 4706-4707.
*487 I
Como parte de un operativo de drogas, varios agentes de la Policía de Puerto Rico intervinieron con el Sr. Wilfredo Rivera Cintrón. Le incautaron 21 bolsas de heroína, 82 bol-sas de la droga conocida como “crack”, 38 bolsas de cocaína y 11 bolsas de picadura de marihuana. Transcripción de la vista de juicio, Apéndice, pág. 15. Contra el señor Rivera Cintrón se presentaron tres acusaciones por violar el Art. 401 de la Ley Núm. 4 (24 L.P.R.A. see. 2401). Específica-mente, se le imputó poseer heroína, cocaína y marihuana con intención de distribuirlas. Se presentó una acusación por cada una de las sustancias controladas incautadas.
No obstante, a la luz de la prueba que se presentó du-rante el juicio por tribunal de derecho, el Tribunal de Pri-mera Instancia declaró al peticionario culpable de otro de-lito distinto, a saber, tres infracciones al Art. 404 de la misma Ley Núm. 4, supra, posesión simple o sin intención de distribuir.
De este modo, el 30 de septiembre de 2009, el foro pri-mario dictó sentencia. En ella, impuso una pena de tres años de cárcel en cada uno de los tres cargos, para un total de nueve años de prisión. Dispuso, además, que la pena se cumpliría consecutivamente y mediante sentencia suspen-dida en un programa privado de rehabilitación. Durante el acto en que se dictó sentencia, la defensa del señor Rivera Cintrón solicitó que el cumplimiento de las penas fuera concurrente. Consideró que los delitos imputados surgie-ron de la misma situación de hechos y de la misma transacción. Por entender que era un asunto discrecional, el Tribunal de Primera Instancia declinó su solicitud y mantuvo el cumplimiento consecutivo de las penas.
En desacuerdo, el señor Rivera Cintrón presentó un re-curso de apelación ante el Tribunal de Apelaciones. El acu-sado señaló que no se probó su culpabilidad más allá de *488 toda duda razonable. Además, adujo que no procedía cum-plir sentencia por tres cargos de forma consecutiva, pues a su modo de ver, el foro primario “piramidó [sic] las penas de un mismo hecho en una misma fecha- un solo acto”. El foro apelativo intermedio emitió una sentencia el 28 de septiembre de 2010 y confirmó el dictamen del foro primario. Luego de discutir y concluir que se probó la cul-pabilidad del peticionario más allá de duda razonable, el Tribunal de Apelaciones sostuvo que el foro primario no erró al imponer una pena total de nueve años que habría de cumplirse consecutivamente. Cimentó su proceder en que la doctrina del concurso de delitos no podía aplicarse a la Ley de Sustancias Controladas de Puerto Rico. A tales efectos, expresó:
Es un hecho cierto que el presente caso, es uno de concurso ideal homogéneo, pues se viola la misma disposición legal más de una vez (Art. 404 de la Ley de Sustancias Controladas). Por tanto, aunque este caso es sobre concurso real de delitos, por no estar atemperada la Ley de Sustancias Controladas al mo-delo de pena dispuesto en el Código Penal de 2004, el foro de instancia podía imponer una pena de tres años por cada delito de posesión de sustancias controladas. Todo ello, pues las pe-nas no pueden agregarse. Asimismo, respecto al modo de cum-plir las penas, aplica la Regla 179 de Procedimiento Criminal [34 L.P.R.A. Ap. II] la cual le concede discreción al foro de instancia para su imposición de manera concurrente o consecutiva. Apéndice, pág. 165.
Oportunamente, el señor Rivera Cintrón solicitó recon-sideración, que fue denegada. Aun inconforme, el señor Rivera Cintrón presentó ante este Foro el recurso de epígrafe. Señaló que el Tribunal de Apelaciones erró al “considerar que la posesión simult[á]nea y en un solo acto de tres sustancias constituye tres delitos distintos”. Peti-ción de certiorari, pág. 10. Además, esbozó que si existía un concurso de delitos, no procedía que las penas fuesen cum-plidas de manera consecutiva. Valga apuntar que el señor Rivera Cintrón no adujo como error la insuficiencia de la *489 prueba presentada para sostener su convicción. Por ello, renunció a ese planteamiento en este Tribunal.
Mediante Resolución de 1 de abril de 2011 expedimos el auto de certiorari. Ambas partes comparecieron y expresa-ron su criterio. Pasamos a resolver este asunto novedoso.
H

>

El Art. 404 de la Ley de Sustancias Controladas, supra, dispone lo siguiente en lo que nos concierne:
(a) Será ilegal el que cualquier persona, a sabiendas o inten-cionalmente, posea alguna sustancia controlada, a menos que tal sustancia haya sido obtenida directamente o de conformi-dad con la receta u orden de un profesional actuando dentro del marco de su práctica profesional, o excepto como se auto-rice en este capítulo.
Toda persona que viole este inciso incurrirá en delito grave y convicta que fuere será castigada con pena de reclusión por un término fijo de tres (3) años. De mediar circunstancias agra-vantes, la pena fija establecida podrá ser aumentada hasta un máximo de cinco (5) años; de mediar circunstancias atenuan-tes, podrá ser reducida hasta un mínimo de dos (2) años. (Én-fasis nuestro).
Como se aprecia, los elementos constitutivos del delito de posesión de sustancias controladas estatuido en el Art. 404, id., son dos: (a) poseer alguna sustancia controlada sin receta u orden emitida por un profesional autorizado; (b) con intención criminal. ([1])
En lo que respecta a cuáles son las sustancias controladas prohibidas, notamos que el Art. 202 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. see. 2202, contiene una diversidad de disposiciones que establecen cinco clasificaciones de sustancias controladas. Ade- *490 más, identifica por separado las drogas conocidas como marihuana, cocaína y heroína. En este caso, no existe con-troversia de que al señor Rivera Cintrón se le probó, más allá de toda duda razonable, que poseía las tres drogas mencionadas al mismo tiempo y con intención criminal. Entonces, procede que dilucidemos, en primera instancia, si el señor Rivera Cintrón cometió un delito, tal como él aduce, o cometió tres delitos como sostuvo el Tribunal de Apelaciones.
La Ley de Sustancias Controladas de Puerto Rico, supra, proviene en gran medida de la Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C.A. sec. 801 et seq.). Véase el Informe Conjunto de las Comisión de Salud y Bienestar, y de la Comisión de lo Judicial de la Cámara de Representantes sobre el P. de la C. 1323, eventual Ley Núm. 4, supra.
Aunque la controversia que nos ocupa parece ser recu-rrente en el foro primario, la realidad es que no es hasta este momento que nos topamos con ella. Así pues, procede que auscultemos cómo la jurisdicción federal, de donde proviene nuestra legislación, ha resuelto controversias similares. Al hacer el análisis, tendremos presente que “[c]uando una de nuestras instituciones derive de determi-nada tradición jurídica, los precedentes de ésta tendrán valor persuasivo en esta jurisdicción, sin olvido de desarro-llos valiosos en otros sistemas, aunque sujeto siempre a las realidades específicas de nuestro medio”. Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576, 588 (1983). Véase, además, R.E. Bernier y J. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, pág. 451.
En United States v. David, 656 F.2d 153 (5to Cir. 1981), el Quinto Circuito Federal de Apelaciones tuvo que diluci-dar si la posesión simultánea de marihuana y de la droga conocida como “metacualona” constituía uno o dos delitos. En su análisis, ese foro concluyó, luego de analizar el his- *491 torial legislativo de la legislación federal, de la cual se derivó la nuestra, que la intención del Legislador fue “penalizar la posesión de cada sustancia controlada”. (Traducción nuestra). Id., pág. 159. El Undécimo Circuito Federal de Apelaciones llegó a una decisión idéntica en la sentencia no publicada United States v. Thompson, 2006 WL 760261, esc. 2.
Por su parte, el Sexto Circuito Federal de Apelaciones tuvo que resolver una controversia similar en United States v. Pope, 561 F.2d 663, 669 (6to Cir. 1977). Allí, la contención del acusado era a los efectos de que la posesión simultánea de heroína y metadona constituía un solo delito y no dos como argumentó el Ministerio Público. Ese Tribunal, luego de hacer un análisis integrado de la Ley de Sus-tancias Controladas de Puerto Rico, resolvió que la pose-sión simultánea de heroína y metadona constituye dos delitos separados. Cimentó su decisión en que la heroína tenía clasificación I, mientras que la metadona tenía clasificación II.
El Cuarto Circuito de Apelaciones llegó a una decisión semejante en United States v. Grandison, 783 F.2d 1152, 1155-1156 (4to Cir. 1986). En ese entonces, el acusado Grandison argüyó que la posesión simultánea de heroína y cocaína constituía un solo delito, porque todos los hechos surgían de un solo incidente y, además, las sustancias con-troladas se descubrieron en el mismo salón y fueron descu-biertas simultáneamente. No obstante, el foro apelativo federal le dio la razón al Ministerio Público y resolvió que realmente se trató de dos delitos. Id., pág. 1156. Ese tam-bién es el parecer del Segundo Circuito Federal de Apela-ciones, según resuelto en United States v. De Jesus, 806 F.2d 31 (2do Cir. 1986).
La postura del Primer Circuito Federal de Apelaciones es cónsona con la de los otros tribunales mencionados. En particular, el Primer Circuito sostuvo en United States v. Bonilla Romero, 836 F.2d 39, 47-48 (1988), que la posesión *492 simultánea de diferentes sustancias controladas constituía delitos distintos. Incluso, ese foro esbozó que una interpre-tación textual del artículo revelaba su alcance. En especí-fico, indicó:
We believe these holdings are consistent with the plain meaning of §841 (a) (1) which creates a violation for possession of “a controlled substance”, not for “a controlled substance or group of controlled substances”. Id., pág. 47.
B
Nos parece altamente persuasiva la interpretación que los distintos tribunales federales de apelaciones dan a la ley federal de sustancias controladas, que es muy similar a la nuestra.
El Art. 404 de nuestra ley, supra, establece que quien posea alguna sustancia controlada con intención criminal infringe ese precepto. Entonces, la controversia medular consiste en auscultar si la frase "alguna sustancia contro-lada” puede interpretarse como la posesión de varias sus-tancias controladas al mismo tiempo. Una interpretación del texto del Art. 404, supra, y de la intención legislativa que la motivó nos lleva a concluir que ese artículo se que-branta cada vez que una persona posee una sustancia con intención criminal.
No podemos concebir cómo se puede concluir que la frase “alguna sustancia controlada” recoge la situación en que una persona posee varias sustancias controladas a la vez. Es decir, lo que pretende el peticionario es que enmen-demos el Art. 404, supra, para que lea “alguna sustancia controlada o algunas sustancias controladas”. Si la Asam-blea Legislativa hubiese querido que la posesión simultá-nea de diferentes sustancias controladas constituyera un solo delito, así hubiera redactado el Art. 404, supra. No obstante, el legislador no lo hizo.
Resolvimos de forma similar en Pueblo v. Matos Pretto, 93 D.P.R. 113, 127 (1966), aunque en un contexto distinto. *493 En esa ocasión, determinamos que una persona que le quita la vida a dos seres humanos en un accidente automo-vilístico transgrede dos veces el derogado delito de homici-dio, regulado en el Art. 203 del Código Penal de 1937 (33 L.P.R.A. ant. see. 635). En particular, indicamos:
Con la muerte ilegal, no maliciosa, de “un ser humano” en ocasión de realizarse un acto legal sin la debida prudencia o circunspección, queda perpetrado un delito de homicidio involuntario. Los Arts. 205 y 206 hablan en términos singula-res como “para que la muerte constituya ... homicidio será preciso que la víctima muera” y “ninguna persona podrá ser convicta de ... homicidio a menos que la muerte de la persona,” etc. No se refieren a “seres humanos,” ni a personas muertas.” Se incurre pues, en delito, con perfecta independen-cia y sustantividad cada vez que un ser humano muere en esas circunstancias. Pueblo v. Matos Pretto, supra, pág. 127.
Así pues, concluimos que la posesión simultánea de marihuana, cocaína y heroína constituye tres delitos distintos al amparo del Art. 404, supra. Dicho de otro modo, se incurre en delito, con perfecta independencia y sustantividad cada vez que, con intención criminal, se posee una sustancia controlada sin receta u orden emitida por un profesional autorizado. Sin embargo, ello no dis-pone de la controversia ante nuestra consideración. Como siguiente paso metódico, nos toca resolver si la decisión del Legislador de no tipificar la posesión simultánea de marihuana, cocaína y heroína como un solo delito vulnera la Constitución de Estados Unidos o la de Puerto Rico.
I — I H-I I — 1
A
En Pueblo v. Santiago, 160 D.P.R. 618, 626 (2003), mencionamos que un principio básico de nuestro ordenamiento jurídico “es que ninguna persona será puesta en riesgo de ser castigada dos veces por el mismo delito”. Específicamente, la Quinta Enmienda de la Constitución de *494 Estados Unidos esboza que “nadie podrá ser sometido por la misma ofensa dos veces a un juicio”. L.P.R.A., Tomo 1, ed. 2008, pág. 189.([2]) Por su parte, el Art. II, Sec. 11 de la Constitución de Puerto Rico establece que “[n]adie será puesto en riesgo de ser castigado dos veces por el mismo delito”. L.P.R.A., Tomo 1, ed. 2008, pág. 343. El propósito de esa garantía constitucional es evitar que el Estado abuse de su autoridad y hostigue a un ciudadano con pro-cedimientos múltiples por un solo hecho delictivo. Pueblo v. Santiago, supra, pág. 627.
El desarrollo jurisprudencial del Tribunal Supremo de Estados Unidos de América revela que aún se encuentra vigente el análisis que se empleó en: Blockburger v. United States, 284 U.S. 299 (1932), reiterado en Texas v. Cobb, 532 U.S. 162, 172-173 (2001); Rutledge v. United States, 517 U.S. 292, 297 — 298 (1996); Ball v. United States, 470 U.S. 856, 861-864 (1985); Whalen v. United States, 445 U.S. 684, 691-695 (1980); Brown v. Ohio, 432 U.S. 161,167-168 (1977). Allí, el Tribunal Supremo federal indicó que la norma aplicable para determinar si el mismo acto, o la transacción, constituye una violación de dos disposiciones legales distintas es analizar si cada disposición penal infringida requiere prueba de un hecho adicional que la otra no exige. Blockburger v. United States, supra, pág. 304.([3])
La profesora Olga E. Resumil Ramírez interpreta lo re-suelto en Blockburger v. United States, supra, de la forma siguiente:
El análisis estricto de esta doctrina lleva a la interpretación de que casi ningún caso de concurso estaría protegido contra *495 procesos múltiples toda vez que en casi la totalidad de los casos la tutela penal que distingue las conductas punibles por su tipificación contienen elementos distintos que lo caracteri-zan a tenor con el bien tutelado. O.E. Resumil Ramírez, Dere-cho procesal penal, San Juan, Ed. Butterworth, 1993, T. II, Sec. 26.10, pág. 337.
A una conclusión similar llegó el profesor Chiesa Aponte. Véase E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1992, Vol. 2, Sec. 16.5, págs. 420-421.
Como señala el profesor Mañalish Raffo, el llamado Blockburger test “exige que el tribunal compare [las] definiciones [de los delitos] para así verificar que cada uno requiera, a lo menos, un elemento que el otro no requiere. Si esto se da, entonces puede castigarse por más de un delito”. J.P. Mañalich Raffo, El concurso de delitos: bases para su reconstrucción en el derecho penal de Puerto Rico, 74 (Núm. 4) Rev. Jur. U.P.R. 1021, 1068 (2005).
Ahora bien, “si la definición de uno de los delitos incor-pora todos los elementos que exige la definición del otro, entonces se trata de un solo delito, en la medida en que el segundo constituye un delito ‘menor incluido’ (lesser included offense)”. íd., págs. 1068-1069.
En Puerto Rico no contamos con jurisprudencia que brinde mayor protección en cuanto a esa cláusula constitucional. Por el contrario, en varias ocasiones hemos acogido la norma que se pautó en: Blockburger v. United States, supra. Pueblo v. González Rivera, 94 D.P.R. 686, 689 (1967); Pueblo v. Martínez Ríos, 89 D.P.R. 362, 365 (1963); Pueblo v. Tribunal Superior, 82 D.P.R. 47, 51 (1961). Véase, además, E.L. Chiesa Aponte, Doble exposición, 59 (Núm.) Rev. Jur. U.P.R. 479, 491 (1990).([4]) Es decir, *496 no hay factura más ancha. E.L. Chiesa Aponte, Los derechos del acusado y la factura más ancha, 65 (Núm. 1) Rev. Jur. U.P.R. 83, 117-118 (1996).
El único precedente de este Foro que parece estar en conflicto con lo resuelto en Blockburger v. United States, supra, es Pueblo v. Meléndez Cartagena, 106 D.RR. 338 (1977). En ese caso, rechazamos aplicar el Blockburger test para resolver que procedía una convicción por tres delitos que surgían de un episodio criminal. En específico, resolvi-mos que había impedimento para castigar por los delitos de (1) posesión, (2) transportación y ocultación, y (3) distri-bución de heroína. Id., pág. 348.
Sustentamos nuestra decisión en que el Art. 63 del Código Penal de 1974 (33 L.P.R.A. ant. see. 3321) protegía una “pluralidad de acciones convergentes en un mismo acontecimiento antijurídico”, lo que ocurría “cuando se con-sumen en etapas sucesivas diversos delitos, con tan estre-cho ligamen causal entre cada estadio que el de rango mayor absorbe las sanciones correspondientes a los otros”. Pueblo v. Meléndez Cartagena, supra, pág. 348. Sin embargo, expresamos que la interpretación estatutaria hacía “innecesaria la consideración en términos constitucionales del resultado de imponer múltiples penas por el mismo acto”. Id., pág. 347. Dicho de otro modo, nuestra decisión descansó totalmente en el Art. 63 del Código Penal de 1974, supra, y no en la cláusula constitucional contra catigos múltiples.
B
En el caso que nos ocupa, para probar cada cargo se requirió prueba distinta e independiente, con su cadena de evidencia correspondiente para cada sustancia controlada. Esa prueba demostró que el señor Rivera Cintrón poseyó, simultáneamente, marihuana, cocaína y heroína, sustan- *497 cias controladas que el legislador catalogó de forma dife-rente en la ley que nos ocupa. Como cada cargo requirió prueba distinta e independiente, se cumplió con el análisis establecido en Blockburger v. United States, supra, y su progenie. Tal como señalaron los profesores Chiesa Aponte y Resumil Ramírez, la protección constitucional que ofrece la cláusula contra castigos múltiples en este contexto es muy limitada.
Por consiguiente, concluimos que la determinación que hizo el foro apelativo intermedio, que hoy refrendamos, a los efectos de que la posesión simultánea de marihuana, cocaína y heroína constituye tres delitos distintos al am-paro del Art. 404, supra, no vulnera la Constitución de Es-tados Unidos ni la de Puerto Rico.
Ahora bien, como último paso analítico debemos auscul-tar si la parte general del Código Penal aplica a la Ley de Sustancias Controladas de Puerto Rico. De ser así, proce-dería aplicar la figura del concurso de delitos, según se regula en los Arts. 78-79 de ese Código, supra.
IV
A
El Art. 11 del Código Penal de 2004 (33 L.P.R.A. see. 4639) expresa que “[l]os principios contenidos en este subtítulo aplican a la conducta regulada por otras leyes penales, salvo que éstas dispongan lo contrario”. Conforme a lo anterior, en nuestra jurisdicción la parte general del Código Penal aplica a las leyes penales especiales, a menos que estas contengan disposición en contrario. En el caso específico del concurso de delitos, la Asamblea Legislativa fue más enfática pues aprobó la Ley Núm. 317-2004, mediante la cual enmendó la Regla 179 de Procedimiento Criminal. 34 L.P.R.A. Ap. II. Como resultado de esa en- *498 mienda, la Regla 179 quedó redactada de la forma si-guiente:

Regla 179. Sentencias consecutivas o concurrentes

Cuando una persona fuere convicta de un delito, el tribunal sentenciador, al dictar sentencia, deberá determinar si el tér-mino de prisión impuesto habrá de cumplirse consecutiva o concurrentemente con cualquiera o cualesquiera otros térmi-nos de prisión. Si el tribunal omitiere hacer dicha determina-ción, el término de prisión impuesto se cumplirá concurrente-mente con cualesquiera otros que el tribunal impusiere como parte de su sentencia, o con cualesquiera otros que ya hubie-ren sido impuestos a la persona convicta.
En casos donde exista un concurso ideal, concurso real, o delito continuado, se sentenciará conforme lo disponen las sees. 4706 a 4708 del Título 33, parte del Código Penal del Estado Libre Asociado de Puerto Rico. (Enfasis nuestro).
Al escudriñar detenidamente la Ley de Sustancias Controladas de Puerto Rico nos percatamos de que esta no prohíbe que se aplique la parte general del Código Penal a los delitos tipificados en ella. Por ende, es necesario concluir, según el Art. 11 del Código Penal, supra, y la Regla 179 de Procedimiento Criminal, supra, que la parte general del Código Penal de 2004 aplica a la Ley de Sustancias Controladas de Puerto Rico. La Prof. Dora Nevares-Muñiz concluye de forma distinta. En particular, menciona:
¿Cómo opera el concurso cuando se imputan delitos del Có-digo Penal y la Ley de Sustancias Controladas que no ha sido enmendada para adoptar el modelo del Código? Como esta ley no tiene una disposición que impida el concurso de penas como lo tiene la Ley de Armas, se atenderá a la Regla 179 de Pro-cedimiento Criminal. Entiendo que el juez impondrá una sen-tencia conforme el Art. 79 del Código Penal para las conviccio-nes bajo el Código y otra sentencia por la convicción bajo la Ley de Sustancias Controladas. Como bajo el Código se trata de penas de reclusión en años naturales, mientras que bajo la Ley de Sustancias Controladas son en años sujetos a la boni-ficación automática de la Ley de Corrección, las penas no pue-den agregarse. En ese caso, las penas se cumplirían de forma concurrente, salvo que el juez disponga que sean consecutivas. *499 Regla 179 de Procedimiento Criminal. D. Nevares-Muñiz, Derecho Penal puertorriqueño: nuevo Código Penal de Puerto Rico, 5ta ed., San Juan, Ed. Inst, para el Desarrollo del Derecho, 2005, pág. 408.
Aunque simpatizamos con el razonamiento de la profe-sora Nevares-Muñiz, no podemos refrendarlo. La Ley de Sustancias Controladas de Puerto Rico contempla un sis-tema de penas distinto al del Código Penal de 2004. Sin embargo, el legislador no indicó que la parte general del Código Penal aplicaría solo a leyes penales especiales que tuviesen un sistema de penas similar al de ese cuerpo. Por el contrario, la Asamblea Legislativa dispuso que la parte general del Código Penal aplicará a las leyes penales espe-ciales, salvo disposición en contrario. La Ley de Sustancias Controladas de Puerto Rico no contiene una disposición en contrario. Además, la Regla 179 de Procedimiento Criminal, supra, dispone diáfanamente que cuando exista un concurso de delitos, se sentenciará conforme a los Arts. 78-80 del Código Penal, 33 L.P.R.A. sees. 4706-4708. Así pues, procede que analicemos la figura del concurso de de-litos a la luz de los hechos que nos ocupan.
B
Además de la protección constitucional contra castigos múltiples, antes discutida, nuestro ordenamiento jurídico contiene los Arts. 78-79 del Código Penal de 2004, supra, que regulan respectivamente, el concurso ideal y real de delitos. El Art. 78, supra, dispone:

Subcapítulo TV Concurso

See. 4706. Ideal y Medial de delitos

Cuando sean aplicables a un hecho dos o más disposiciones penales, cada una de las cuales valore aspectos diferentes del hecho, o cuando uno de estos es medio necesario para realizar el otro, se condenará por todos los delitos concurrentes, pero sólo se impondrá la pena del delito más grave, seleccionada de *500 la mitad superior del intervalo de pena.([5])
Mediante el concurso ideal, una persona realiza un solo acto que infringe varias disposiciones penales. L.E. Chiesa Aponte, Derecho Penal sustantivo, Pubs. J.T.S., 2007, pág. 69. Véase, además, Pueblo v. Alvarez Vargas, 173 D.P.R. 587 (2008). La glosa española en el tema ex-presa que “no puede valorarse igual una acción que produce un solo delito, que cuando esa misma acción realiza varios delitos. En este último caso, la aplicación de uno solo de los tipos delictivos no agotaría la valoración plena del complejo delictivo”. F. Muñoz Conde y M. García Arán, Derecho Penal: parte general, 7ma ed., Valencia, Ed. Tirant lo Blanch, pág. 462.
Al explicar el concurso ideal, los estudiosos del tema diferencian el concurso ideal heterogéneo del concurso ideal homogéneo. Chiesa, op cit., pág. 69. El concurso ideal heterogéneo se configura cuando un hecho transgrede dos o más delitos distintos. Mañalich Raffo, supra, pág. 1036. Por su parte, en el concurso ideal homogéneo se viola el mismo tipo penal varias veces. Santiago Mir Puig explica que el concurso ideal, según regulado en el Código Penal español,
... no ha pretendido alcanzar al llamado concurso homogéneo, que necesariamente implica igual gravedad de los delitos en concurso. La razón material podría verse en que en esta clase de concurso de delitos, que se da cuando mediante una con-ducta se producen varios resultados, en realidad no concurre un solo “hecho”, sino tantos “hechos” cuantos resultados pro-ducidos dolosamente, estos es: que no se trata de un propio concurso ideal, sino de un concurso real .... Ahora añadiré que sólo admitiendo dicha pluralidad de hechos puede explicarse *501 que en el ejemplo propuesto [matar a varias personas con una sola bomba] se afirme la existencia de un concurso de delitos de homicidio, es decir, varios “homicidios”. Si no correspon-diese un hecho distinto para cada muerte, sólo podría decirse que existe un hecho con varias muertes, no con varios homici-dios, pues el delito de homicidio no sólo requiere la muerte, sino el hecho de matar. Cada delito de homicidio requiere un hecho homicida. S. Mir Puig, Derecho Penal: parte general, 7ma ed., Buenos Aires, Ed. B de f, 2005, págs. 640-641.
A una conclusión idéntica llega la profesora Nevares-Muñiz en cuanto a nuestro Código Penal de 2004:
El Artículo 78 regula el concurso ideal que algunos llaman heterogéneo. Distíngase que, no se atiende en este artículo lo que los tratadistas denominan concurso ideal homogéneo. Cuando se viola la misma disposición penal más de una vez como parte de un mismo hecho, (e.g., un conductor impacta con su automóvil a otras personas) y causa tres lesionados, se trata de un concurso real, atendido en el Art. 79 de este Código. D. Nevares-Muñiz, Nuevo Código Penal de Puerto Rico, 3ra ed., San Juan, Ed. Inst, para el Desarrollo del Derecho, 2008, págs. 111-112.
Como se aprecia, en nuestra jurisdicción, el concurso ideal homogéneo se trata como uno real, según regulado en el Art. 79, supra, que dispone:

See. 4707. Real de delitos

Cuando alguien haya realizado varios delitos que sean juz-gados simultáneamente, cada uno de los cuales conlleva su propia pena, se le sentenciará a una pena agregada, que se determinará como sigue:
(a) Cuando uno de los delitos conlleve pena de reclusión de noventa y nueve (99) años, ésta absorberá las demás.
(b) Cuando más de uno de los delitos conlleve reclusión por noventa y nueve (99) años, se impondrá además una pena agregada del veinte por ciento (20%) por cada víctima.
(c) En los demás casos, se impondrá una pena para cada delito y se sumarán, no pudiendo exceder la pena agregada del veinte por ciento (20%) del límite máximo del intervalo de pena para el delito más grave. (Enfasis suplido).
La profesora Helen Silving define el concurso real de delitos como “[v] arias unidades de conducta que se suceden *502 una a otra con intervalos más o menos largos, pero juzga-das en conjunto, [que] pueden violar la misma ley o diversas leyes”. H. Silving, Elementos constitutivos del delito, San Juan, Ed. Universitaria, 1976, pág. 180. Por su parte, la profesora Nevares-Muñiz explica que en “la doctrina penal civilista el concurso real se trata como una figura procesal que requiere que se juzgue al actor en un mismo proceso por todos los delitos que cometió”. D. Nevares-Muñiz, Derecho Penal puertorriqueño: parte general, 5ta ed., San Juan, Ed. Inst, para el Desarrollo del Derecho, 2005, See. 8.4.6, pág. 354.
Sobre la forma de computar las penas cuando hay con-curso real, el Prof. L.E. Chiesa Aponte expresa que el Có-digo Penal de 2004 “dispone que la pena impuesta en estos supuestos no puede exceder ‘el 20% del límite máximo del intervalo de pena máxima del delito más grave’. Esto equi-vale a multiplicar la pena máxima por 1.20”. Chiesa Aponte, op. cit, pág. 68. Conforme a lo anterior, en los casos en que haya un concurso real de delitos, lo que pro-cede es sumar las penas de todos los delitos. Luego, se multiplica el límite máximo del intervalo de pena para el delito más grave por 1.20. Entre esas dos sumas se escoge la más baja. Pueblo v. Alvarez Vargas, supra, pág. 600.
C
En este caso, el foro apelativo intermedio indicó que existía un concurso ideal homogéneo, porque se violó la misma disposición penal tres veces. Sin embargo, entendió que la Ley de Sustancias Controladas de Puerto Rico no estaba atemperada al modelo de penas dispuesto en el Có-digo Penal de 2004, por lo que el foro primario contaba con discreción para imponer las penas consecutivas, según la Regla 179 de Procedimiento Criminal, supra. El Tribunal de Apelaciones estuvo correcto en cuanto a la primera ase-veración, pero incorrecto en cuanto a la segunda.
*503 Como se explicó anteriormente, la parte general del Có-digo Penal aplica a la Ley de Sustancias Controladas de Puerto Rico. Consecuentemente, el Tribunal de Primera Instancia no tenía discreción para imponer las penas consecutivamente. Lo que procedía era computar la pena conforme al Código Penal.
Sin lugar a dudas, en este caso se configuró un concurso ideal homogéneo de delitos, porque se violó la misma dis-posición penal (Art. 404, supra) tres veces. Como se indicó, ese tipo de concurso se atiende conforme dispone el Art. 79, supra.
Así pues, concluimos que el señor Rivera Cintrón trans-gredió el Art. 404, supra, tres veces, lo que constituye un concurso real. Realizado el cómputo correspondiente, de-terminamos que el señor Rivera Cintrón debe cumplir seis años de prisión, que serán consumados mediante sentencia suspendida en un programa privado de rehabilitación, se-gún dispuso el foro primario.
En este caso el límite máximo del intervalo de pena para el delito más grave es cinco años. Véase el Art. 404, supra. Adviértase que primero se suman todas las penas, que en este caso totalizan nueve años. Luego, se multiplica el límite máximo del intervalo de pena para el delito más grave que en este caso es cinco años por 1.20, para un total de seis años. Entre las dos sumas seleccionamos el total de seis años por ser menor. Véase Pueblo v. Álvarez Vargas, supra, pág. 600.
V
Por todo lo anterior, revocamos la sentencia que emitió el Tribunal de Apelaciones. Determinamos que el señor Rivera Cintrón debe cumplir seis años de prisión, que serán con-sumados mediante sentencia suspendida en un programa de rehabilitación privado, según dispuso el foro primario.

*504
Se dictará Sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez no intervino.

(1) Sobre el tema de la intención en el Derecho Penal véase, en general, Pueblo v. Rivera Cuevas, 181 D.P.R. 699 (2011).

(2) El texto original en inglés es el siguiente: “no person shall he subject for the same offence to be twice put in jeopardy”. U.S.C.A., ed. 1987, pág. 35.

(3) El texto en inglés indica: “The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not”. (Enfasis suplido).

(4) Como muy bien señala el profesor Chiesa Aponte, la protección del derogado Art. 63 del Código Penal de 1974 (33 L.P.R.A. see. 3321), era mayor que la que ofrece la cláusula constitucional contra castigos múltiples. E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1992, Vol. 2, pág. 181. Sobre la protección que brindan los Arts. 78-79 del Código Penal de 2004 (33 L.P.R.A. sees. 4706-4707), nos expresaremos más adelante.

(5) El Art. 78, supra, regula también el llamado concurso medial. Este surge cuando existen “dos [hechos] perfectamente diferenciados; pero la conexión íntima entre los delitos cometidos, que es una teleológica de principio a fin, hace que el legislador los equipare al concurso ideal propiamente dicho”. F. Muñoz Conde y M. García Arán, Derecho Penal: parte general, 7ma ed., Valencia, Ed. Tirant lo Blanch, pág. 463. Como este caso no versa sobre ese tipo de concurso, no profundizamos en su análisis.